**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|   |   |   |
|---|---|---|
| NOW-CASTING ECONOMICS, LTD., | : | |
| | : | No. 18-cv-02442 (ER) |
| *Plaintiff,* | : | |
| | : | |
| *-v.-* | : | |
| | : | |
| ECONOMIC ALCHEMY LLC, | : | |
| | : | |
| *Defendant.* | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### THIRD-PARTY PLAINTIFF'S OPPOSITION TO THIRD PARTY DEFENDANT'S MOTION TO DISMISS

Third-party defendant The Federal Reserve Banks ("The Reserve Banks") have moved to dismiss the Third-Party Complaint ("TPC") [ECF Doc. 66.]  The most important fact for the Court to be aware of on this motion, as set out in the TPC, is that The Reserve Banks filed petitions opposing and seeking cancellations of the trademarks described by plaintiff in the Complaint as the Challenged Marks, which were almost word-for-word identical to the petitions filed by the plaintiff.  It is virtually impossible for this Court to entertain and resolve the claims of the plaintiff without duplicating the litigation brought by The Reserve Banks on these identical factual and legal issues, almost certainly inconsistently and at a considerable waste of judicial resources.

For these reasons and based on the argument set out below, the Court should deny the motion to dismiss the TPC by The Reserve Banks.

### LEGAL ARGUMENT

### 1.  THE RESERVE BANKS WERE PROPERLY JOINED.

The Reserve Banks submit that Fed. R. Civ. P. 14 only applies where a party seeks indemnification, contribution or subrogation.  This is inaccurate.  "A third party claim may be

asserted when the third party's liability is **somehow dependent** on the outcome of the main action **or** when the third party is secondarily liable to the defendant. The purpose of Rule 14 is to avoid two separate actions which should be tried together; to save the time and cost of duplicating evidence; to obtain consistent results; and to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against a third-party*." Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 656 (S.D.N.Y. 2017) (internal citations and quotes omitted; emphasis added).

It cannot seriously be argued that this Court's rulings concerning identical claims based on identical allegations concerning the identical trademark brought by parties which, on the face of the pleadings, are affiliated and alleged to be acting in concert do not meet this standard. With regard to whether this action would settle all aspects of the parties' controversy, this factor also does not counsel discretionary stay or dismissal. As the *FN Cellars* court noted, "A declaratory action is preferable to a TTAB action for addressing 'all aspects of the controversy between the parties, because the TTAB cannot address a trademark non-infringement claim." *Whole E Nature, LLC v. Wonderful Co., LLC*, No. 17CV10-LAB (KSC), 2017 WL 4227150, at *3 (S.D. Cal. Sept. 22, 2017) (internal citations and quotes omitted).  Given that Economic Alchemy's ("EA") claims could be brought separately as a declaratory judgment action against The Reserve Banks, and that such an action could – by virtue of the identical nature of the issues of the respective parties' posture with respect to EA – be consolidated with this one, skipping that step and joining The Reserve Banks in this action is entirely consistent with Rule 14.

The Reserve Banks also deny Economic Alchemy's assertion that the standard for joinder under Fed. R. Civ. P. 19 is met by the likelihood of "inconsistent obligations" because that eventuality is merely "speculative."  It is not, and The Reserve Banks do not explain how it is.

Nor should the Court credit the argument made by The Reserve Banks that "complete relief" can be afforded any of the parties in this action with respect to the rights and indeed the protectability of the subject trademark without including the identical claims made by The Reserve Banks. A similar situation was addressed by the court in *Oreck Corp. v. Nat'l Super Serv. Co.*, No. CIV. A. 95-3738, 1996 WL 371929 (E.D. La. July 2, 1996):

> Through its business activities, Karcher is engaging in a course of conduct which brings it into adversarial conflict with Oreck. Karcher, NSS, and Oreck are all selling and marketing similar products. While Oreck claims it has a valid trademark, NSS and Karcher are seeking a declaratory judgment rendering it invalid. Even though Oreck claims that they have no knowledge of infringement by Karcher or that they have no present intention to sue Karcher, the business activities of Karcher constitute "adversarial conflict".
>
> Karcher has a direct interest in having a declaratory judgment rendered that Oreck's trademark is invalid. Since both of the prongs can be met under these facts, subject matter jurisdiction exists over the counterclaims.
>
> Karcher has met the requirements under FRCP 19 and 20 to be joined as a counterclaimant; as such, status as an indispensable party is immaterial.

*Id*. at *3. Here, too, Rule 19 appropriately encompasses the claims and interests and joinder is appropriate.

There is no question regarding subject matter jurisdiction. It is undisputed that The Reserve Banks have filed oppositions and petitions to cancel the subject marks of EA in the TTAB. As the court in *Neilmed Prod., Inc. v. Med-Sys., Inc.*, 472 F. Supp. 2d 1178, 1180 (N.D. Cal. 2007) explained, this is sufficient to confer personal jurisdiction on this Court and to establish subject matter jurisdiction as well for purposes of a declaratory judgment action because a detailed notice of opposition in the TTAB gives a party seeking declaratory judgment a reasonable apprehension of being sued. *Accord*, S*an Diego Cty. Credit Union v. Citizens Equity First Credit Union*, 344 F. Supp. 3d 1147 (S.D. Cal. 2018) ("In *Neilmed*, the district court rejected the defendant's argument that a mere filing of a notice of opposition to a trademark registration application with the PTO

does not provide grounds for the plaintiff to have a reasonable apprehension of litigation.") *Hansen Beverage Co. v. Cytosport*, Inc., No. CV090031VBAAGRX, 2009 WL 882414, at *2 (C.D. Cal. Mar. 23, 2009) ("Defendant has not dispelled the inference that it may sue, and there is no allegation of a covenant not to sue").

Nor is there a meaningful distinction between opposition notices aimed at challenging "attempted registration" rather than "use" of the marks being applied for. Copasetic Clothing Ltd. v. Roots Canada Corp., No. 17-CV-02300-GPC-KSC, 2018 WL 4051693, at *5 (S.D. Cal. Aug. 24, 2018). Indeed, while this Court, in Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc., 784 F. Supp. 2d 391, 395 (S.D.N.Y. 2011), held that "what exists here is a dispute before the TTAB regarding registration of the TAMAYA mark" and granted a motion to dismiss, it observed that, "other courts have denied a declaratory-judgment defendant's motion to dismiss for lack of jurisdiction" where, as is the case here, the facts amounted to "a more substantial controversy than exists here," id. at 395-96, noting that in one such case, Surefoot LC v. Sure Foot Corporation, 531 F.3d 1236 (10th Cir. 2008), "the Tenth Circuit found jurisdiction in light of 'five separate TTAB oppositions combined with an extensive history of interactions between the parties . . .'"  Id. at 396. That, in fact, approximates the F here, as set out in the TPC.

Indeed, this passage from the *Vina Casa* decision is particularly instructive, and applicable, with reference to this case:

> A district court generally has discretion as to whether or not to "declare the rights and other legal relations of any interested party." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (citing 28 U.S.C. § 2201(a)). In the Second Circuit, however, "a court must entertain a declaratory judgment action: (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," *Continental Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir.1992) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir.1969)).

784 F. Supp. 2d at 397. Although the Court in *Vina Casa* went on to reiterate its conclusion that "this dispute can properly be resolved in the TTAB proceeding already underway," *id.*, it addressed the mandate of the Second Circuit by holding that the pursuit of the district court action "does not further an efficient resolution of any dispute between the parties." *Id.* That is not the case here, if only because of the parallel and essentially identical sets of claims being contested.

## 2. THIS COURT HAS PERSONAL JURISDICTION OVER THE RESERVE BANKS.

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "The New York Court of Appeals has interpreted injury 'within the state' to include harm to a business in the New York market through lost sales or lost customers." *Am. Network, Inc. v. Access Am./Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997). It can hardly be suggested that the TPC fails to meet this standard, but The Reserve Banks do just this, writing, "The TPC does not allege any facts to support an exercise of specific personal jurisdiction. Indeed, the TPC fails to allege that any bank other than FRB New York has ever used the term 'nowcast' – much less does it allege where such use occurred, how that use purportedly infringed on EA's trademarks and how such use affected commerce in New York State." (Reserve Banks MOL at 6-7.)

What is omitted from this list is that The Reserve Banks – **all twelve of them** – filed oppositions against Economic Alchemy's applications to register NOWCAST and NOW-CAST in new classes and petitions to cancel those marks in the previously registered classes, claiming that the Fed Banks would be damaged by the continued or prospective registration of those trademarks. (TPC ¶¶ 27 – 34.) Even if the stated reason for them doing so was because they all received cease and desist letters from Economic Alchemy, which they did not, it was not necessary

for all of them to file petitions opposing and seeking cancellation of these trademarks; it would have been sufficient for the Federal Reserve Bank of New York, the only institution – according to The Reserve Banks – alleged to be using the marks to have done so in order to prevent any future "damage" arising from the registration of the marks.

In fact, the premise of a claim of standing in a TTAB proceeding is that the petitioning party have a direct interest in the mark itself. "To establish its standing to assert a mere descriptiveness or genericness ground of opposition or cancellation, a plaintiff need only show that it is engaged in the manufacture or sale of the same or related goods as those listed in the defendant's involved application or registration and that the product in question is one which could be produced in the normal expansion of plaintiff's business; that is, that plaintiff has a real interest in the proceeding because it is one who has a present or prospective right to use the term descriptively [or generically] in its business." *Nobelle.com, LLC v. Qwest Commc'ns Int'l, Inc.*, 66 U.S.P.Q.2d 1300 (T.T.A.B. 2003) (internal quotes and citations omitted). Here the grounds for opposition by The Reserve Banks all sound in either genericness or mere descriptiveness. If, in fact, none of them – or only one of them – claims a "present or prospective right to use the term descriptively [or generically] in its business," they have misrepresented their interests before the TTAB, and their petitions there are subject to dismissal for that reason.

An alternative ground for finding personal jurisdiction is general jurisdiction.  In that regard, accepting The Reserve Banks' denial that they are subject to personal jurisdiction requires the Court to disregard a wealth of matters of public record and indeed admitted by the The Reserve Banks themselves. As stated on their own website:

> The Depository Institutions Deregulation and Monetary Control Act of 1980 (Monetary Control Act) introduced an even greater degree of coordination among Reserve Banks with respect to the pricing of financial services offered to depository institutions. There has also been a trend among Reserve Banks to

> centralize or consolidate many of their financial services and support functions
> and to standardize others. Reserve Banks have become more efficient by entering
> into intra-System service agreements that allocate responsibilities for services and
> functions that are national in scope among each of the 12 Reserve Banks.

"Structure of the Federal Reserve System," The Federal Reserve Board of Governors web page,

found at https://www.federalreserve.gov/aboutthefed/structure-federal-reserve-system.htm

(October 25, 2018).[1] In other words, The Reserve Banks, all twelve of them, "coordinate" their

activities, have "centralize[d] or consolidate[d] many of their financial services and support

functions," and "enter[ed] into intra-System service agreements that allocate responsibilities for

services and functions that are national in scope among each of the 12 Reserve Banks." These

admissions are impossible to square with the impression they seek to impart in their motion that

The Reserve Banks are only loosely-related regional copies of each other, each one atomically

going about its own business solely within its geographical zone of responsibility in isolation to

the other. It is hardly speculative to expect that, in the course of discovery, the extent to which

the banks' activities overlap and interlock will be disclosed to a far greater extent.

Indeed, the modern-day integration and streamlining of the integrated Reserve Bank

system described in the passage above is not the one that existed in 1983, when the case cited by

The Reserve Banks, *Northpark Nat. Bank v. Bankers Tr. Co.*, 572 F. Supp. 520, 522 (S.D.N.Y.

1983), was decided. More significantly, the facts in that case do not, as The Reserve Banks

claim, stand for the proposition that "this district has previously recognized that it lacks

personal jurisdiction over Reserve Banks located outside New York." The holding in *Northpark*

was far more narrow, resting on the notion that whatever it was that the Federal Reserve Bank of

---

[1] The Federal Reserve Board of Governors has supervisory authority over The Reserve Banks.

Chicago was doing that had an effect in New York, it was either trivial, i.e., a mere matter of resource rationing, or "intra-governmental bookkeeping" done without specific intent.

### 3. THE RESERVE BANKS' MOTION TO DISMMISS THE THIRD PARTY COMPLAINT UNDER FED. R. CIV. P. 12(b)(6) IS MERITLESS.

The Reserve Banks' motion includes an argument to dismiss the TPC on the ground of failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6).  Economic Alchemy does not dispute the elements of the respective claims as set out by The Reserve Banks, but does submit that the Court should reject its analysis with respect to the allegations, keeping in mind that where a pleading is dismissed for failing to state a claim upon which relief can be granted, it is "the usual practice" to allow leave to re-plead.  *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

The Reserve Banks state that Economic Alchemy "alleges that FRB New York 'launched the Federal Reserve Bank of New York's infringing 'Nowcasting Report' on April 12, 2016. That's it. No further allegations are made regarding this 'Nowcasting Report' – not the nature or content of this report, not if and how it was used in commerce, and not to whom it was directed or distributed." (The Reserve Banks MOL at 11.)  As a threshold matter, the point made in the previous section – that The Reserve Banks have, by virtue of filing their petitions in the TTAB, necessarily admitted to having a "real interest" in the proceeding because they claim they have a "present or prospective right to use the term" in their business – should apply to address this point as well.  Moreover, ¶ 31 of TPC states, "As alleged in the Fed Petitions, Economic Alchemy has sent cease and desist letters and allegations of infringement to several of the Fed Banks alleging that their use of 'nowcast' or 'now-cast' in connection with the offering of various services and/or products creates a likelihood of confusion with Economic Alchemy's trademarks."  It is hard to believe that, under the notice pleading standard, The Reserve Banks are not on notice of the

conduct being complained of here with respect to each of the claims they seek to have dismissed, including the claim under N.Y. Gen. Bus. L. § 349.

Regarding the breach of contract claim, Economic Alchemy acknowledges that certain allegations were omitted from its pleading, and requests leave to re-plead this claim.

## CONCLUSION

For the foregoing reasons, the Reserve Banks' motion to dismiss should be denied.

Ronald D. Coleman (RC 3875)
MANDELBAUM SALSBURG PC
1270 Avenue of the Americas – Suite 1808
New York, NY 10020
rcoleman@lawfirm.ms
*Attorneys for Third-Party Plaintiff*
*Economic Alchemy LLC*

Dated: January 31, 2019