UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOW-CASTING ECONOMICS, LTD.,

                              Plaintiff,

- against -

ECONOMIC ALCHEMY LLC,

                              Defendant.

ECONOMIC ALCHEMY LLC,

                              Counterclaim Plaintiff ,

- against -

NOW-CASTING ECONOMICS, LTD.,

                              Counterclaim Defendant.

ECONOMIC ALCHEMY LLC,

                              Third-Party Plaintiff,

- against -

FEDERAL RESERVE BANK OF ATLANTA,
FEDERAL RESERVE BANK OF CHICAGO,
FEDERAL RESERVE BANK OF BOSTON,
FEDERAL RESERVE BANK OF MINNEAPOLIS,
FEDERAL RESERVE BANK OF ST. LOUIS,
FEDERAL RESERVE BANK OF CLEVELAND,
FEDERAL RESERVE BANK OF PHILADELPHIA,
FEDERAL RESERVE BANK OF RICHMOND,
FEDERAL RESERVE BANK OF DALLAS,
FEDERAL RESERVE BANK OF NEW YORK,
FEDERAL RESERVE BANK OF KANSAS CITY,
FEDERAL RESERVE BANK OF SAN FRANCISCO,
and THE BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM,

                              Third-Party Defendants.

**Opinion and Order**
**18 Civ. 2442 (ER)**

EDGARDO RAMOS, United States District Judge:

Now-Casting Economics, Ltd. ("Now-Casting" or "Plaintiff") brought this action pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*; 28 U.S.C. § 1331; and the Declaratory Judgment Act, 25 U.S.C. § 2201. Defendant is Economic Alchemy LLC ("Economic Alchemy" or "Defendant"), a financial technology company, with trademarks for the contested terms "nowcast," "nowcasting," and derivations thereof. Now-Casting alleges that its use of the contested name and the terms at issue does not infringe on Defendant's intellectual property rights because they are generic and merely descriptive. Economic Alchemy brought counterclaims against Now-Casting and joined twelve federal reserve banks[1] and the board of governors for the federal reserve as third-party defendants. For the reasons set forth below, Now-Casting's motion for judgment on the pleadings is DENIED, and the third-party defendants' motion to dismiss is GRANTED with prejudice.

## BACKGROUND

Now-Casting is a specialist economic prediction and forecasting business that publishes economic forecasting data from an automated platform. Doc. 1, ¶ 8. Now-Casting's founders Domenico Giannone ("Giannone") and Lucrezia Reichlin ("Reichlin") designed a nowcasting model, which is an advanced statistical model that forms the core of their business. *Id.* Their work with developing the nowcasting model has been recorded in papers as early as 2005. *Id.* Now-Casting was formed in 2010 and began using the name "Now-Casting Economics Ltd." in the United States since at least May 2011. *Id.* ¶ 9. In the economics context, "nowcast"

---

[1] Federal Reserve Bank of St. Louis, the Federal Reserve Bank of Atlanta, the Federal Reserve Bank of Chicago, the Federal Reserve Bank of Minneapolis, the Federal Reserve Bank of Boston, the Federal Reserve Bank of New York, the Federal Reserve Bank of Philadelphia, the Federal Reserve Bank of Cleveland, the Federal Reserve Bank of Richmond, the Federal Reserve Bank of Dallas, the Federal Reserve Bank of San Francisco and the Federal Reserve Bank of Kansas City (collectively, "the Federal Banks" or "Banks").

describes a model for the prediction of economic conditions, like gross domestic product ("GDP") growth, in the present or near future.[2]  *Id.* ¶ 10.

Economic Alchemy is in the business of economic prediction and uses technology to create its own nowcasts and perform nowcasting analysis for others.  *Id.* ¶ 15.  Now-Casting asserts that while Economic Alchemy may have developed their own formulas, algorithms, and technology for producing nowcasts, they were not the first economic predictors to use the term. *Id.*  On May 13, 2013, Economic Alchemy obtained a trademark registration for "NOW-CAST" in Class 35, *id.* ¶ 17, and on May 28, 2013, a registration for "NOWCAST" in Class 35 (collectively, "Challenged Marks"), *id.* ¶ 16.  Economic Alchemy describes the registrations as encompassing economic predicting and forecasting and a method of providing predictions or estimates of present or near-present economic or financial conditions.  *Id.* ¶ 19.  They claim a first use date in the United States commerce stream of January 25, 2012, and a first use date anywhere of November 27, 2011.  *Id.* ¶ 18.  Dr. Giselle Guzman ("Dr. Guzman"), Economic Alchemy's principal, has written articles using the terms "nowcast" and "nowcasting."  Doc. 1, Ex. 56–59.

The Federal Reserve System is made up of twelve Federal Reserve Banks, the Board of Governors of the Federal Reserve System, and the Federal Open Market Committee.  Doc. 67, 2. The Federal Banks are federally chartered corporate entities that carry out the nationwide operations of the central bank of the United States.  *Id.*  On April 12, 2016, Federal Reserve Bank of New York launched the "Nowcasting Report," a weekly economic bulletin.  Doc. 36, 24.  Economic Alchemy asserts that this report constitutes trademark infringement.  *Id.*

---

[2] Economic Alchemy denies this allegation.  Doc. 36, ¶ 1.

Economic Alchemy alleged that the Federal Banks offered various services and products under the name "NOWCAST." *Id.*

On September 8, 2015, Delia Sawhney, a Director of Research at the Federal Reserve Bank of Boston registered for Economic Alchemy's NOW-CAST Service, and so did Jessica Iannuzzi, a software developer at the Federal Reserve Bank of New York signed up for the service on September 8, 2016. *Id.* at 25. Economic Alchemy sent the Federal Banks cease-and-desist letters and allegations of infringement for the Federal Banks' use of the terms "nowcast" or "now-cast." *Id.* at 26. On or about May 1, 2017, the Federal Banks filed a petition of trademark cancellation before the Trademark Trial and Appeal Board ("TTAB") with respect to Economic Alchemy's registration of "NOWCAST" and fourteen days later, they filed one for "NOW-CAST." *Id.* at 25.

On December 12, 2016, Economic Alchemy sent Now-Casting a cease-and-desist letter asserting that Now-Casting's use of the name "Now-Casting Economics, Ltd." ("Contested Name") infringed on the Challenged Marks. Doc. 1, ¶ 2. Now-Casting instituted proceedings against Economic Alchemy in front of the TTAB to cancel their registrations and oppose their application of the pending trademark (collectively, "TTAB Proceedings"). *Id.* ¶ 3.

Now-Casting's main contentions are that the terms "NOWCAST" and "NOW-CAST" are generic and therefore not registerable as trademarks. *Id.* ¶ 49. The terms are allegedly known and understood by the consuming public as the services for which Economic Alchemy registered and uses the Challenged Marks for, namely predictions of economic conditions in the present or near-present. *Id.* Now-Casting argues that registration of the Challenged Marks is contrary to public policy and will deprive Now-Casting and the consuming public of the ability to continue to use these terms. *Id.* ¶ 54.

Now-Casting points to a variety of instances where the terms "nowcast" and "nowcasting" were used "generically" or "descriptively," *before* Economic Alchemy's claimed date of first use: in articles and books written by other economics and researchers, *id.* ¶20–37; and articles written by Dr. Guzman, Economic Alchemy's principal, *id.* ¶ 38–42; as well as use *after* Economic Alchemy's claimed date of first use: articles and books by economists and researchers who have continued to use the term, *id.* ¶ 44; economic courses and conferences, *id.* ¶ 45; other companies, *id.* ¶ 46; job listings, *id.* ¶ 47; and resumes of economists, *id.* ¶ 48.

## PROCEDURAL HISTORY

On March 1, 2017, Now-Casting filed petitions in the TTAB opposing Economic Alchemy's application to register its new "NOWCAST" mark and to cancel its prior "NOWCAST" mark. Doc. 36, 13. Now-Casting's petitions were "virtual twins" of petitions filed by the Federal Banks in connection with the same registrations, which were dismissed for failure to state a claim. *Id.* at 15. On October 11, 2017, Now-Casting filed a petition to cancel the "NOW-CAST" mark and moved to consolidate the three matters on October 19, 2017. *Id.* at 13. Economic Alchemy, acting through its principal, Dr. Guzman, moved to dismiss the petition for the challenge against the "NOW-CAST" mark, which delayed the consolidation. *Id.* at 14. On February 22, 2018, the TTAB granted Economic Alchemy's motion to dismiss for failure to state a claim because Now-Casting did not set forth sufficient facts to plead cancellation based on genericness or descriptiveness. *Id.* at 14–15. On March 13, 2018, Now-Casting filed an amended petition to cancel the "NOW-CAST" mark and Economic Alchemy moved to dismiss once again, but on April 26, 2018, Now-Casting moved to suspend the TTAB Proceedings. *Id.* at 15. Because the issue of infringement will not be decided in the TTAB Proceedings, Now-Casting now brings this action in federal court. Doc. 1, ¶ 4.

Now-Casting filed the instant action on March 19, 2018, against Economic Alchemy seeking declaratory relief stating Economic Alchemy has no trademark rights over the Challenged Marks; two orders, pursuant to 15 U.S.C. § 1119, directing the Commissioner of Patents and Trademarks to cancel the Challenged Marks; an order restraining Economic Alchemy from interfering with Now-Casting's use of the Contested Name; and attorney's fees and costs. Doc. 1, ¶ 4. Economic Alchemy filed an amended answer with counterclaims against Now-Casting and joined the Federal Banks as third-party defendants on August 21, 2018. Doc. 36. On December 21, 2018, Now-Casting moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Doc. 64. That same day, the third-party defendants filed a joint motion to dismiss alleging lack of personal jurisdiction, improper venue, improper joinder and failure to state a claim. Doc. 66.

## DISCUSSION

## I. MOTION FOR JUDGMENT ON THE PLEADINGS

### A. Standard of Review

Under Fed. R. Civ. Pro. 12(c), courts apply the same standard as applied on a motion to dismiss for failure to state a claim under Rule 12(b)(6). Judgment on the pleadings is appropriate only if, drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to relief. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). In considering a Rule 12(c) motion, courts should assume all the well pleaded factual allegations in the non-moving party's pleadings to be true, and all opposing allegations in the movant's pleadings as false. *Brown v. De Fillipis*, 717 F. Supp. 172, 178 (S.D.N.Y. 1989). When deciding a motion for judgment on the pleadings, a court may consider "the pleadings and attached exhibits, statements or documents incorporated

by reference, and matters subject to judicial notice." *Prentice v. Apfel*, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

The presumption of validity in the federal registration of a trademark can be overcome by establishing the generic or descriptive nature of the mark. *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 442 (S.D.N.Y. 2016). "Marks are classified, in ascending order of strength, as (1) generic; (2) descriptive; (3) suggestive; [or] (4) arbitrary or fanciful." *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384–85 (2d Cir. 2005) (internal quotation marks and citations omitted). It is well-settled law that a trademark holder cannot appropriate generic or descriptive terms for its exclusive use. *Am. Cyanamid Corp. v. Connaught Labs., Inc.*, 800 F.2d 306, 308 (2d Cir. 1986). Courts may consider factors such as: (1) proof of widespread use of the mark by competitors that has not been contested by the seller, and (2) the public's inability to call the product by any other name than the trademarked term. *Horizon Mills Corp. v. QVC, Inc.*, 161 F. Supp. 2d 208, 214 (S.D.N.Y. 2001).

## B. Generic Terms

The Lanham Act provides for the cancellation of a trademark when it "becomes the generic name for the goods or services, or a portion thereof." 15 U.S.C. § 1064(3); *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193–94 (1985) ("[A] registered mark may be canceled at any time on the grounds that it has become generic."). Trademark protections benefit consumers by allowing them to select products based on origin, as this encourages sellers to market products of reliable quality that consumers associate with their mark. *American Cyanamid*, 800 F.2d at 308. Consumers do not benefit when trademark laws prevent sellers from using generic or descriptive terms to describe their products, i.e. describing their product as a "bicycle." *Id.*

Whether a trademark is generic or descriptive is a matter of fact that is not properly determined by examining the pleadings alone. *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 334 (E.D.N.Y. 2009); *see also In re Cordua Restaurants, Inc.*, 823 F.3d 594, 599 (Fed. Cir. 2016) (holding whether a trademark is generic is a question of fact). Generic marks consist of words identifying the relevant category of goods or services which are not distinctive and thus not protectable under any circumstances. *Star Industries*, 412 F.3d at 385. There are two principle circumstances under which courts have determined that trademarks are generic: (1) when a seller appropriates an existing term and claims exclusive rights in it as a "trademark," and (2) where a seller establishes "trademark rights" in a term which most of the relevant public then appropriates as the name of the product. *Horizon Mills*, 161 F. Supp. 2d at, 213.

When determining if a mark is generic, the key question is the primary significance of the registered mark to the relevant public. *Tiffany & Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474, 480 (S.D.N.Y. 2014). Under the "primary significance test," courts ask whether the primary significance of the term, in the minds of the relevant public, is the product or the producer. *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938). To become generic, the principal meaning of the work to the relevant public must be the nature or class of an article, rather than indication of its origin. *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 144 (2d Cir. 1997). "A mark's common usage and understanding by the relevant public may be discerned from 'any competent source,'" such as "consumer surveys, testimony of consumers or trade professionals, dictionary definitions, uncontested usage of the mark by competitors to describe their products, generic usage in newspaper and magazine articles, and generic usage by

the proponent of the trademark." *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 360 (E.D.N.Y. 2007).

Based on the pleadings, the Court has no basis on which to define the relevant public because Economic Alchemy denied the allegations about the relevant public. Doc. 73, 3. Now-Casting is entitled to judgment on the pleadings only if it has established "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Juster Assocs. v. City of Rutland, Vt.*, 901 F.2d 266, 269 (2d Cir. 1990) (internal citations omitted). In considering a Rule 12(c) motion, courts should assume all the well pleaded factual allegations in the non-moving party's pleadings to be true, and all opposing allegations in the movant's pleadings as false. *Brown v. De Fillipis*, 717 F. Supp. 172, 178 (S.D.N.Y. 1989). In its complaint, Now-Casting defines the relevant public as "those interested in economic predictions and forecasting such as economists, investors, research analysists, students, and others." Doc. 1, ¶ 51. Economic Alchemy denied every allegation regarding the relevant public in its answer. Doc. 36, 6. Economic Alchemy does not provide its own definition of the relevant public. Doc. 76, 3. All favorable inferences must be drawn in favor of the non-moving party. *Latour v. Columbia Univ.*, 12 F. Supp. 3d 658, 661 (S.D.N.Y. 2014). Therefore, the pleadings do not contain a definition of the relevant public, which is an issue of material fact that remains unresolved.

Now-Casting's motion for judgment on the pleadings turns on the primary significance that the relevant public places on the terms at issue. Now-Casting explicitly makes that point in its reply memo:

> [T]his Motion ultimately turns on whether the Court can determine as a matter of law, based on the overwhelming and uncontradicted facts before it, that Plaintiff has satisfied the critical inquiry to show genericness—"whether members of the

relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question." *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989–90 (Fed. Cir. 1986).

Doc. 76, 5. Now-Casting asserts that Economic Alchemy's rote denial does not overcome a motion for judgment on the pleadings, however it is Now-Casting who must prove the absence of all material facts. *Tiffany*, 994 F. Supp. 2d at 479 ("The moving party bears the burden of demonstrating the absence of a material fact."). The definition of the relevant public is of paramount importance in a trademark claim based on genericness. Doc. 73, 3; *see also Kellogg Co.*, 305 U.S. at 113 (holding under the primary significance test courts analyze consuming public's understanding of mark). Accordingly, after a thorough review of the pleadings, the Court holds that Now-Casting has not alleged a non-disputed sufficient factual basis for inferring who the relevant public is, and subsequently whether the terms at issue are generic.

## C. Merely Descriptive Terms

Marks which are "merely descriptive" are not inherently distinctive because when they describe a product, they do not identify a source, and hence is not protectable. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). A "merely descriptive" mark describes the qualities, ingredients, or characteristics of a good or service and similar goods can be described using the same descriptive qualities. *Estate of P.D. Beckwith, Inc., v. Comm'r of Patents*, 252 U.S. 538, 543–44 (1920). In *Beckwith*, the challenged mark contained the terms "Round Oak" and "Moistair Heating System"; the Supreme Court found that "Moistair Heating System" alone was descriptive but that in association with "Round Oak," which did not describe anything about the product, the composite mark was protectable. *Id.* at 544–45. Thus, the prohibition is not directly against "merely descriptive words" but of a trademark which only consists of such words. *Id.* at 544.

The Lanham Act provides for an exception when a descriptive mark that could not otherwise be registered under the Act becomes distinctive of the seller's goods in commerce. 15 U.S.C. §1052(e) and (f). A mark that is merely descriptive of a product can become entitled to protection if it acquires a secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000) (holding secondary meaning occurs when the relevant public attaches a primary significance to the source of the product or service rather than the product or service itself). Accordingly, the general rule is that an identifying mark is distinctive and capable of being protected if (1) it is inherently distinctive, or (2) it has acquired distinctiveness through secondary meaning. Restatement (Third) of Unfair Competition § 13.

The Court takes judicial notice of the books, articles, courses, conferences, job listings, resumes, etc. presented in the pleadings. Doc. 65, 11. Federal Rule of Evidence 201(b) permits a court to take notice of facts that are not subject to reasonable dispute because they are generally known within the court's territory or that can be accurately determined from reliable sources. A court may take judicial notice of publicly available materials—including articles, books, and reports—that show the information available to the relevant market at the relevant time. *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 299 (S.D.N.Y. 2012); *see also L-7 Designs, Inc. v. Old Navy*, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (on a Rule 12(c) motion, courts consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case"). Economic Alchemy "denies knowledge and information sufficient to answer or deny the allegations" in reference to the articles, books, conferences, etc., that Now-Casting cites in its complaint. Doc. 36, 3–6. However, as these are publicly available materials, the Court takes judicial notice of them.

Now-Casting asserts that the Challenged Marks "encompass economic predicting and forecasting, including a prediction of economic conditions in the present or near-present, and a method of providing predictions or estimates of present or near-present economic or financial conditions," Doc. 1, ¶ 19, however, Economic Alchemy denies that allegation, Doc. 36, 3. Plaintiff has presented a large amount of evidence of how the terms are used in other contexts. Doc. 1, ¶ 20–48. The pleadings contain hundreds of examples that use variations of the terms at issue primarily in an academic context such as research articles, books, and university seminars. *Id.* The evidence also references other competing companies, such as Putnam Global, Ex. 112; Nowcasting Scotland, Ex. 113; PwC Global, Ex. 114; Ten-X, Ex. 115; and Fulcrum Asset Management, Ex. 116.

But the uses catalogued in the complaint does not amount to proof of "generic" uses of the Challenged Marks because the uses are not in connection with the sale or offering for sale of services. Doc. 73, 5. The mere existence of third-party registrations of the mark are not enough; the alleged infringer must show factors such as third-party use of the trademark and that it has customer recognition. *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 281 (S.D.N.Y. 1998). Now-Casting's evidence does not demonstrate third parties used the terms as trademarks or in connection with the sale of goods and services. *Id.* at 277 (holding presumption of validity extends only to goods and services noted in the registration certificate). Similarly, uses by Dr. Guzman, Economic Alchemy's principal, were in academic journals and do not refer to the term as a trademark or in connection to an economic forecasting company. Doc. 73, 5. Furthermore, Now-Casting has not presented evidence that the term is used widely in the media. *Horizon Mills Corp.,* 161 F. Supp. 2d at 214. Accordingly, despite the numerous

submissions the evidence is not enough to overcome the presumption that Economic Alchemy's trademark is valid.

Now-Casting further argues that even if the Challenged Marks are found to be merely descriptive, they are still invalid unless Defendant can prove secondary meaning. Doc. 65, 19. The Court cannot determine who the relevant public is based on the pleadings and thus cannot ascertain whether the merely descriptive terms have taken on a secondary meaning. *Wal-Mart Stores*, 529 U.S. at 211. Furthermore, as Economic Alchemy asserts, Now-Casting has posed a legal question to the Court on a motion for judgment on the pleadings under Rule 12(c). Doc. 73, 6. Now-Casting has not plead facts in support of their argument against the Challenged Marks obtaining a secondary meaning. Doc. 65, 19. Therefore, no reasonable fact-finder can determine whether the terms at issue have acquired a secondary meaning based on the pleadings.

## II. DISMISSING THE COUNTERCLAIMS

Now-Casting's motion to dismiss Economic Alchemy's counterclaims is premised entirely on the alleged validity of its motion for judgment on the pleadings. Doc. 73, 8. Now-Casting merely asserts that because the terms at issue are generic and/or merely descriptive, they are not capable of secondary protection, and therefore, Now-Casting's use of its business name and the terms at issue could not have infringed on the non-existent trademark rights. Doc. 65, 20–21. As this Court has held that it cannot determine whether the terms are generic or descriptive based on the pleaded facts, Now-Casting's motion for dismissing the counterclaims also fails.

### III. JOINT MOTION TO DISMISS

#### A. Standard of Review

The eleven Federal Banks that are not located in New York move to dismiss the case for lack of personal jurisdiction and improper venue; all the Federal Banks move to dismiss the action for proper joinder and failure to state a claim. Doc. 67. When ruling on a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To satisfy the pleading standard under Fed. R. Civ. Pro. 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. As a threshold matter the Court addresses the claims regarding personal jurisdiction, venue, and joinder before the argument for failure to state a claim.

#### B. Personal Jurisdiction

The relevant eleven Federal Banks challenge personal jurisdiction in this District as they are not located in New York. There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 201 (S.D.N.Y. 2018), *adhered to on denial of reconsideration*, No. 16-CV-6496 (LAK), 2018 WL 6985207 (S.D.N.Y. Dec. 20, 2018). General jurisdiction over foreign corporations is proper when the corporation's affiliations are so continuous and systematic that they are essentially "at

home" in the forum state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). A corporate defendant is at home at the place of incorporation and its principal place of business. *See BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). "Specific jurisdiction is a significantly more limited doctrine" than general jurisdiction. *Dennis*, 343 F. Supp. 3d at 202. For a state court to exercise specific jurisdiction, the suit must arise out of the defendants' contacts which create a substantial connection with the forum state. *Id.* at 202–03. The due process inquiry requires courts to evaluate the "quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)).

Additionally, courts in New York State may exercise specific personal jurisdiction over defendants under the New York long-arm statute if (1) the defendant transacts any business within the state, and (2) the cause of action arises from that business transaction. *Alibaba Grp. Holding v. Alibabacoin Found.*, No. 18-CV-2897(JPO), 2018 WL 2022626, at *4–8 (S.D.N.Y. Apr. 30, 2018) (citations omitted); *see also* N.Y. C.P.L.R. § 302(a) (NY long-arm statute). "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 422 (S.D.N.Y. 2009) (quoting *Best Van Lines*, 490 F.3d at 246).

General jurisdiction is not proper here because none of the Banks challenging venue were incorporated in New York or have their principal place of business in New York. Doc. 67, 6. District courts in this Circuit have previously recognized it lacks personal jurisdiction over

Reserve Banks located outside New York. *See Northpark Nat. Bank v. Bankers Tr. Co.*, 572 F. Supp. 520, 522–23 (S.D.N.Y. 1983) (dismissing complaint against Federal Reserve Bank of Chicago on jurisdictional grounds because it had no choice but to participate in open market transactions per its quintessential government functions); *see also Total Aviation Servs., Inc. v. United Jersey Bank*, 626 F. Supp. 1087, 1090 (E.D.N.Y. 1986) (dismissing action against Federal Reserve Bank for similar reasons). Economic Alchemy contests the Banks' reliance on *Northpark* because the Banks allegedly coordinated and centralized their operations, and that the federal reserve system is different than it was in 1983. Doc. 75, 7. But even if true, Economic Alchemy's allegations are inadequate to establish personal jurisdiction because aside from an exceptional case, a corporation is "at home" in its place of incorporation or principal place of business. *Daimler*, 571 U.S. at 139. Economic Alchemy does not dispute that any of the Federal Banks challenging personal jurisdiction are incorporated in New York or have their principal place of business in New York (except the Federal Reserve Bank of New York). Accordingly, the Court does not credit Economic Alchemy's conclusory allegation of general jurisdiction.

Economic Alchemy appears to imply that because the Federal Banks filed oppositions against Economic Alchemy's applications to register the Challenged Marks in a TTAB proceeding, this Court has specific jurisdiction over them. Doc. 75, 5 (claiming to meet personal jurisdiction standard because the Federal Banks filed oppositions to Economic Alchemy's registration of the Challenged Marks). However, they cite no legal precedent that shows this assertion establishes personal jurisdiction. Additionally, Economic Alchemy does not claim that any of the eleven banks outside of New York used the term "nowcast" or a variant in connection with activities in New York. For similar reasons, specific jurisdiction is also not proper under the New York long-arm statute. Doc. 67, 7; N.Y. C.P.L.R. § 302(a). Lastly, Economic Alchemy

does not address the minimum contacts required for this Court to exercise specific personal jurisdiction over the Banks.  Doc. 67, 7–8.  Accordingly, Economic Alchemy has not demonstrated that this Court has personal jurisdiction over the Banks, except the Bank of New York whose principal place of business is in New York.

### C. Improper Venue

The eleven Federal Banks outside New York object to venue pursuant to Fed. R. Civ. P 12(b)(3).  The controlling statute is 28 U.S.C. § 1391(b), which establishes in relevant part that suit may be brought in the district in where "a substantial part of the events or omissions giving rise to the claim occurred."  When determining where a trademark infringement case arises, courts use a "weight of contacts" test.  *Honda Associates v. Nozawa Trading, Inc.*, 374 F. Supp. 886, 891–92 (S.D.N.Y. 1974).  Venue is proper in a trademark infringement case in each jurisdiction where infringement is properly alleged to have occurred.  *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 182 (S.D.N.Y. 1995).  To demonstrate a substantial part of evens giving rise to a trademark infringement case occurred, the movant can demonstrate either substantial sales or intentional targeting of the infringing product in the relevant district.  *Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-CV-9875 (JPO), 2018 WL 941747, at *2 (S.D.N.Y. Feb. 16, 2018).  Economic Alchemy did not allege facts that demonstrate the Federal Banks challenging venue infringed on their trademark in New York.  Furthermore, Economic Alchemy failed to respond to the Banks' venue challenge, effectively conceding that venue is not proper.  *DoubleLine Capital LP v. Odebrecht Fin.*, Ltd., 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018) (holding that when party fails to address claim in opposition to motion to dismiss, those claims are considered abandoned).  Accordingly, venue over the relevant Banks is not proper.

### D. Improper Joinder

Joinder over any of the Federal Banks is not proper. Federal Rule of Civil Procedure 14 permits a defendant to implead a third-party defendant "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(1). It is well-settled that an impleader (or "third party") action must be "dependent on" or "derivative of" the main action. *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000). A third-party claim can also be brought when the third party is secondarily liable to the defendant. *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 656 (S.D.N.Y. 2017). "The traditional grounds for a third-party action are indemnification, contribution, or subrogation…." *Kronyak v. Tishman Constr. Corp.*, No. 16CIV8640ERHBP, 2019 WL 1929842, at *1 (S.D.N.Y. May 1, 2019) (internal citations omitted). Joinder may be required pursuant to Federal Rule of Civil Procedure 19(a)(1)(A), where "the court cannot accord complete relief among existing parties," or 19(a)(1)(B), where the absent person claims an interest in the action and their absence impedes their ability to protect the interest or leaves an existing party subject to substantial risk because of the interest. Fed. R. Civ. P. 19(a)(1)(A)–(B).

Economic Alchemy's allegations do not arise from the claims of the main action. Defendant did not claim indemnification, contribution, or subrogation and did not allege the Banks bear any liability to Economic Alchemy for Now-Casting's claims against it. Doc. 67, 3. Now-Casting seeks declaratory relief of non-infringement and an order holding that Economic Alchemy's trademarks are invalid. Doc. 1, ¶ 4. Instead, Economic Alchemy asserts new claims of action against the Federal Banks: (1) separate purported acts of trademark infringement committed by the banks, and (2) a breach of contract claim. Doc. 36, 27–30.

Economic Alchemy counterargues that this Court's ruling concerns identical claims and allegations concerning an identical trademark brought by the parties acting in concert in front of the TTAB.[3]  Doc. 75, 2.  Aside from citing to a Southern District of California case to support their assertion that in trademark infringement cases declaratory action is preferable to a TTAB, Economic Alchemy pleads no facts that show joinder is proper.  Doc. 75, 2.  Additionally, that argument is inapposite as the California case is nonbinding on this Court and did not address questions of joinder.  *Whole E Nature, LLC v. Wonderful Co., LLC*, No. 17CV10-LAB (KSC), 2017 WL 4227150, at *3 (S.D. Cal. Sept. 22, 2017) (discussing forum shopping in trademark infringement case in California).  Accordingly, Economic Alchemy has not demonstrated that joinder is proper under Rule 14.

As the Federal Banks claim, nothing about Now-Casting's claims requires their presence to grant complete relief to Now-Casting or Economic Alchemy.  Doc. 67, 4.  And even assuming *arguendo* that the Banks have an interest in the action, Economic Alchemy cannot assert that interest on their behalf.  *See Peregrine Myan. Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (holding defendant's attempt to assert an interest on behalf of the absent party fell outside the language of Rule 19(a)).  Economic Alchemy relies on an unpublished District of Louisiana case to assert that complete relief cannot be granted in this case without joining the Federal Banks.  *Oreck Corp. v. Nat'l Super Serv. Co.*, No. CIV. A. 95-3738, 1996 WL 371929 (E.D. La. July 2, 1996) (holding joinder was proper under Rule 19 when third party had direct interest in trademark action).  Not only is this case nonbinding on this Court, but it also does not support Defendant's proposition that complete relief cannot be asserted without joining the Banks.  The

---

[3] Economic Alchemy does not name the parties, but the Court assumes they refer to the Federal Banks, the Board of Governors, and Now-Casting.

third party in *Oreck* was seeking declaratory judgment rendering the trademark invalid and so had a direct interest in the litigation. *Id.* at *3. Here, the Federal Banks do not seek declaratory relief and Economic Alchemy cannot assert this interest on their behalf. Economic Alchemy failed to explain why the Court cannot afford complete relief between Now-Casting and Economic Alchemy unless the Banks are joined to the main action. Accordingly, joinder is not proper under Rule 19 or Rule 14.

### E. Failure to State a Claim

Even if joinder were proper and this Court could exercise personal jurisdiction and venue over the relevant Federal Banks, the third-party complaint merits dismissal based on failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). See *supra* Part III(A) for a discussion on the standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Economic Alchemy asserts five causes of action against the Federal Banks: (1) infringement of registered trademarks, (2) infringement of common law trademarks and unfair competition, (3) false designation of origin, (4) New York deceptive business practices, and (5) breach of contract. Doc. 36, 27–30.

The first three causes of action are based on Economic Alchemy's Challenged Marks and require that Economic Alchemy plead facts that show that the Federal Banks used the Challenged Marks "in commerce" in connection with the sale or advertising of goods and services without Economic Alchemy's consent and that such use is likely to cause confusion, mistake, or deception. 15 U.S.C. § 1114(1)(a). However, Economic Alchemy only made conclusory allegations that the Federal Banks offered various services and products using the term "nowcast." Doc. 36, 24. Economic Alchemy did identify that on April 12, 2016, the Federal Reserve Bank of New York launched a bulletin called "Nowcasting Report" and alleged

that this infringed on their trademark.  *Id.*  The Banks challenged this bare allegation of

infringement.  Doc. 77, 9.  Economic Alchemy reasoned that the Banks have an interest in the

litigation because they filed the TTAB petitions and were on notice of the conduct being

complained of here.  Doc. 75, 8–9.  Economic Alchemy's position appears to be that because the

Federal Banks challenged the trademark registrations, Economic Alchemy's causes of action

automatically survive a Rule 12(b)(6) motion to dismiss.  *Id.*; Doc. 77, 9.  However, Economic

Alchemy does not cite any precedent to support this argument.

Economic Alchemy brought a fourth cause of action against the Federal Banks pursuant

to N.Y. Gen. Bus. L. § 349 which prohibits "[d]eceptive acts and practices in the conduct of any

business, trade or commerce or in the furnishing of any service" in New York.  "A party

challenging an act or practice under § 349 must show that: (1) defendant engaged in a consumer-

oriented act, (2) that the consumer-oriented act was misleading in a material way, and (3) that

plaintiff consequently suffered injury."  *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273,

301–02 (S.D.N.Y. 2002).  Economic Alchemy failed to plead facts that meet any of these

elements and only made conclusory allegations regarding the Banks' alleged use of the

trademarks.  Doc. 36,  29–30.  Therefore, this cause of action fails.

Finally, Economic Alchemy asserts a breach of contract claim against the Federal

Reserve Bank of Boston and the Federal Reserve Bank of New York.  Doc. 36, 30.  An

employee from each of those two banks registered or signed up for Economic Alchemy's

"NOW-CAST Service" which allegedly meant they agreed to the terms and conditions of the

service.  *Id.* at 25.  Economic Alchemy did not identify which law purportedly governs the

interpretation of the alleged contracts, so for purposes of this motion New York law is

referenced.  To state a claim for breach of contract under New York law, a plaintiff must allege

"(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Regardless of which law Economic Alchemy intended to apply, they did not allege any facts about the terms of the purported contracts, consideration supporting contract formation, or duties and obligations that were breached. Doc. 65, 16. Therefore, this cause of action also fails.

Regarding the overall motion to dismiss, Economic Alchemy responded that while they do not dispute the elements of the respective claims that the Federal Banks made out, the Court should still reject the Banks' analysis. Doc. 75, 8. But Economic Alchemy did not make factual allegations to support this claim. Finally, Economic Alchemy asked the Court for a chance to replead. Doc. 75, 8. It is entirely within this Court's discretion to allow Economic Alchemy to replead. *Irvins v. Metro. Museum of Art*, No. 15-cv-5180(RJS), 2016 WL 4508364, at *5 (S.D.N.Y. Aug. 26, 2016) (denying request for leave to replead after non-movant offered no basis for request or explanation as to how they would cure deficiencies in their complaint). Economic Alchemy did not provide any indication that a revised pleading would overcome its failure to state claims upon which relief can be granted. Doc. 77, 10. Accordingly, the Court finds that Economic Alchemy has not plead sufficient facts to overcome the motion to dismiss or to warrant leave to amend their complaint.

## CONCLUSION

In summary, the motion for judgment on the pleadings is DENIED, and the  motion to dismiss the complaint is GRANTED with prejudice. The parties are directed to attend a status conference on October 17, 2019 at 10:00 a.m. The Clerk of the Court is respectfully directed to terminate the motions. Docs. 61, 64, 66.

It is SO ORDERED.

Dated: September 24, 2019
      New York, New York

EDGARDO RAMOS
United States District Judge