UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOW-CASTING ECONOMICS, LTD.,

                              Plaintiff,

         -v-

ECONOMIC ALCHEMY LLC,

                              Defendant.

CIVIL ACTION NO.: 18 Civ. 2442 (JPC) (SLC)

**ORDER DENYING MOTION TO COMPEL**

**SARAH L. CAVE**, United States Magistrate Judge.

## I.  INTRODUCTION

Plaintiff Now-Casting Economics, Ltd. ("Now-Casting"), a specialist economic prediction and forecasting business that publishes economic forecasting data from an automated platform, brought this action asserting claims under the Lanham Act, 15 U.S.C. § 1051 et seq., against Defendant Economic Alchemy LLC ("Economic Alchemy"), a financial technology company that creates its own nowcasts and performs nowcasting analysis for others.  (ECF No. 1 ¶¶ 8, 15). Economic Alchemy holds trademarks for the terms "nowcast," "nowcasting," and derivations thereof (the "Contested Terms"), and Now-Casting alleges that the Contested Terms are generic and merely descriptive such that Now-Casting's use of the Contested Terms does not infringe on Economic Alchemy's trademark rights.  See Now-Casting Econ., Ltd. v. Econ. Alchemy LLC, No. 18 Civ. 2442 (ER), 2019 WL 4640219, at *1 (S.D.N.Y. Sept. 24, 2019).

Before the Court is Now-Casting's letter-motion to compel (the "Motion") addressed to Economic Alchemy's responses to document requests, requests for admissions, and

interrogatories.  (ECF No. 102).  Economic Alchemy opposes the Motion.  (ECF No. 103).  For the

reasons set forth below, the Motion is GRANTED IN PART and DENIED IN PART.

## II.  <u>BACKGROUND</u>

### A.  <u>Factual Background</u>

The Court incorporates by reference the factual summary set forth in the Opinion and

Order dated September 24, 2019 issued by the Honorable Edgardo Ramos denying Now-Casting's

motion for judgment on the pleadings and granting third-party defendants' motion to dismiss

(the "Sept. 24, 2019 Opinion").[1]  <u>See</u> <u>Now-Casting</u>, 2019 WL 4640219, at *1–2.

### B.  <u>Procedural Background</u>

The Court also incorporates by reference the summary of the procedural history of this

action set forth in the Sept. 24, 2019 Opinion.  <u>See</u> <u>Now-Casting</u>, 2019 WL 4640219, at *2–3.

Following the Sept. 24, 2019 Opinion, on April 22, 2020, Judge Ramos held a conference at the

conclusion of which he directed the parties to submit a proposed joint civil discovery plan.  (ECF

entry 4/22/2020).  The parties did so, and on April 27, 2020, Judge Ramos adopted the Amended

Civil Case Discovery Plan and Scheduling Order (the "April 2020 Scheduling Order"), which set

February 1, 2021 as the deadline for the close of fact discovery.  (ECF No. 85).  Among the other

deadlines in the April 2020 Scheduling Order, responses to requests for admissions were due on

June 1, 2020.  (<u>Id.</u> at 2).

On October 5, 2020, the action was reassigned to the Honorable John P. Cronan.  (ECF

No. 92).  On October 20, 2020, Judge Cronan held a telephone conference with the parties,

---

[1] Economic Alchemy joined as third-party defendants twelve federal reserve banks and the board of governors for
the federal reserve.  <u>See</u> <u>Now-Casting</u>, 2019 WL 4640219, at *1 n.1 (listing names of twelve federal reserve banks).

following which the parties submitted and Judge Cronan adopted a revised Civil Case Management Plan and Scheduling Order (the "October 2020 Scheduling Order") and Stipulation and Order for the Production and Exchange of Confidential Information (the "Protective Order"), which had not previously been in place in this action.  (ECF entry 10/20/2020, Nos. 94–96).  The October 2020 Scheduling Order provided that fact discovery would be completed by December 18, 2020 and expert discovery completed by February 1, 2021.  (ECF No. 95 at 1–2).

On November 12, 2020, Now-Casting submitted a letter to Judge Cronan raising deficiencies in Economic Alchemy's document productions and written discovery responses. (ECF No. 97).  On November 16, 2020, Economic Alchemy responded, representing that it had produced, subject to objections, "all responsive documents" in its control or custody, and raising objections to Now-Casting's discovery requests.  (ECF No. 98).  On December 8, 2020. Judge Cronan referred the action to the undersigned for general pretrial supervision purposes.  (ECF No. 99).

On December 16, 2020, the Court held a conference with the parties, following which it directed the parties to meet and confer regarding the discovery disputes raised in ECF Nos. 97 and 98, and permitted Now-Casting to file the Motion regarding any remaining disputes.  (ECF No. 101).  On January 11, 2021, Now-Casting filed the Motion, on January 15, 2021, Economic Alchemy filed its Opposition, and on January 19, 2021 Now-Casting filed its Reply.  (ECF Nos. 102–04).

Now-Casting served its first set of RFAs (the "First RFAs") on November 15, 2018.  (ECF No. 102 at 2).  On October 1, 2018, Now-Casting served its First Set of Interrogatories (the "First Interrogatories") and its First Set of Requests for Production (the "First RFPs") (the First RFAs, the

First Interrogatories, and the First RFPs, together, the "First Requests"), (ECF No. 104 at 3), and

Economic Alchemy served its responses (the "Responses") on November 2, 2020, following the

October 20, 2020 conference with Judge Cronan.  (Id.; ECF No. 97 at 1).  On June 26, 2020, Now-

Casting served a second set of interrogatories (the "Second Interrogatories") and a second set of

RFPs (the "Second RFPs") (the Second Interrogatories and Second RFPs, together, the "Second

Requests"), on Economic Alchemy, which, to date, has not responded.  (ECF No. 102 at 4).

### III. DISCUSSION

#### A. Legal Standard

##### 1. Relevance generally

The Federal Rules of Civil Procedure establish the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "Rule 26 give a district court 'broad discretion . . . to impose limitations

or conditions on discovery . . . which extends to granting or denying motions to compel or for

protective order on 'just terms.'"  Coty Inc. v. Cosmopolitan Cosmetics, Inc., No. 18 Civ. 11145

(LTS) (SLC), 2020 WL 3317204, at *1 (S.D.N.Y. June 18, 2020) (quoting Capstone Logistics Holdings,

Inc. v. Navarrete, No. 17 Civ. 4819 (GBD) (BCM), 2018 WL 6786237, at *8 (S.D.N.Y. Dec. 13, 2018));

see EM Ltd. v. Rep. of Arg., 695 F.3d 201, 207 (2d Cir. 2012) ("A district court has broad latitude

to determine the scope of discovery and to manage the discovery process.").

### 2.  Interrogatories

Interrogatories are governed by Federal Rule of Civil Procedure 33 and "may inquire into any discoverable matter." Harnage v. Brennan, No. 16 Civ. 1659 (AWT), 2018 WL 4473393, at *3 (D. Conn. Aug. 17, 2018) (citing Fed. R. Civ. P. 33(a)(2)).  "A party served with interrogatories is obliged to respond by 'furnishing such information as is available to the party.'" In re Auction Houses Antitrust Litig., 196 F.R.D. 444, 445 (S.D.N.Y. 2000) (citing Fed. R. Civ. P. 33(a)).

"Federal Rule of Civil Procedure 33 and Local Rule 33.3 permit the use of contention interrogatories, the purpose of which are 'to assist parties in narrowing and clarifying the disputed issue[s] and reducing the possibility of surprise at trial.'" In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., No. 14 Md. 2542 (VSB) (SLC), 2020 WL 6290584, at *3 (S.D.N.Y. Oct. 27, 2020) (quoting Kyoei Fire & Marine Ins. Co., Ltd. v. M/V Maritime Antalya, 248 F.R.D. 126, 157 (S.D.N.Y. 2007)); Fed. R. Civ. P. 33; U.S. Dist. Ct. R. S. & E.D.N.Y., Civ. R. 33.3.  "A party served with interrogatories under Rule 33 has a duty to 'compile information within his control' and provide 'all information available' in his responses." Rivera v. UPS, 325 F.R.D. 542, 546 (S.D.N.Y. 2018) (quoting United States v. All Assets Held at Bank Julius Baer & Co., Ltd., 309 F.R.D. 1, 14 (D.D.C. 2015)).

"Courts generally resist efforts to use contention interrogatories as a vehicle to obtain every fact and ever piece of evidence a party may wish to offer concerning a given issue at trial." Linde v. Arab Bank, PLC, No. 04 Civ. 2799 (VVP), 2012 WL 957970, at *1 (E.D.N.Y. Mar. 21, 2012). "A contention interrogatory is proper where it asks the party to 'explain the factual bases for [that party's] contentions by providing the material facts upon which they will rely, but not a detailed and exhaustive listing of all the evidence that will be offered.'" Keurig, 2020 WL

6290584, at *3 (quoting Linde, 2012 WL 957970, at *1 and collecting cases describing party's obligation in responding to contention interrogatories).

### 3. Requests for Admission

"A request for admission pursuant to Federal Rule of Civil Procedure 36 is 'not a discovery device.'" Keurig, 2020 WL 6290584, at *4 (quoting T. Rowe Price Small-Cap Fund v. Oppenheimer & Co., 174 F.R.D. 38, 42 (S.D.N.Y. 1997)).  Instead, an RFA is "a procedure for obtaining admissions for the record of facts already known by the seeker." Versatile Housewares v. SAS Grp., No. 09 Civ. 10182 (KMK) (PED), 2010 WL 11601225, at *1 (S.D.N.Y. July 15, 2010) (internal citations omitted); see Rep. of Turkey v. Christie's, Inc., 326 F.R.D. 394, 399 (S.D.N.Y. 2018) (explaining that RFAs "'are used to establish admission of facts about which there is no real dispute'") (quoting 7 Moore's Fed. Practice § 36.02[1] (3d ed. 2013)).

An RFA "should be simple and direct, not vague or ambiguous."  Wiwa v. Royal Dutch Petro. Co., Nos. 96 Civ. 8386 & 01 Civ. 1909 (KMW) (HBP), 2009 WL 1457142, at *4 (S.D.N.Y. May 26, 2009) (citing 7 Moore's Fed. Practice § 36.10[6]).  An RFA "should state the fact in such a way that it can be denied or admitted 'with an absolute minimum of explanation or qualification.'" Id. (quoting United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 968 (3d Cir. 1988)).

In responding to an RFA, "the answering party may admit or deny a request or 'state in detail why the answering party cannot truthfully admit or deny it.'" Rep. of Turkey, 326 F.R.D. at 399 (quoting Fed. R. Civ. P. 36(a)(4)).  The simple statement "denied" may be sufficient.  See United Coal, 839 F.2d at 967.  A responding party may qualify a denial if "the statement [in the RFA], although containing some truth, standing alone out of context of the whole truth conveys unwarranted unfair references." Henry v. Champlain Enter., Inc., 212 F.R.D. 73, 77–78 (N.D.N.Y.

2003) (internal citations omitted); <u>Wiwa</u>, 2009 WL 1457142, at *4 (noting that "a responding party may, in good faith, qualify its answer or deny only part of a matter") (citing 7 Moore's Fed. Practice § 36.11[5][b]).  "Qualifying a response may be particularly appropriate if the request is sweeping, multi-part, involves sharply contested issues, or goes to the heart of a defendant's liability." <u>Wiwa</u>, 2009 WL 1457142, at *4 (collecting cases).  A qualification should "'provide clarity and lucidity to the genuineness of the issue and not . . . obfuscate, frustrate, or compound the references.'" <u>Id.</u> at *5 (quoting <u>Champlain</u>, 212 F.R.D. at 78).  Nevertheless, "the bar for a qualified denial should not be set too high [and] [a] response should be deemed sufficient if it reasonably informs the requesting party what is being admitted or denied." <u>Id.</u> (citing <u>JPMorgan Chase Bank v. Liberty Mutual Ins. Co.</u>, No. 01 Civ. 11523 (JSR), 2002 WL 31159139, at *1 (S.D.N.Y. Sept. 27, 2002)).

The answering party may also assert lack of knowledge under certain circumstances, and may assert objections based on "vagueness, that is, the respondent cannot answer because the meaning of the request is uncertain." <u>Rep. of Turkey</u>, 326 F.R.D. at 399 (quoting 7 Moore's Fed. Practice § 36.11[5][c]).

Rule 36 provides that, as to each RFA:

> [t]he matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.

Fed. R. Civ. P. 36(a)(1)(3).  "[T]his provision takes automatic effect if the requested party fails to respond within the specified time frame." <u>Beberaggi v. N.Y.C. Transit Auth.</u>, No. 93 Civ. 1737 (SWK), 1994 WL 18556, at *2 (S.D.N.Y. Jan. 19, 1994) (collecting cases).  In fact, "the requesting party need not even move for a declaration that its requests be deemed admitted." <u>Id.</u>

Despite the automatic effect of the deadlines in Rule 36, the Rule gives a court "some discretion . . . to make exceptions in appropriate circumstances."  Beberaggi, 1994 WL 18556, at 2.  Rule 36(b) provides that "the court may permit withdrawal or amendment [of admissions] if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  Fed. R. Civ. P. 36(b).  Courts have interpreted this provision to grant discretion to "forgive tardiness."  Beberaggi, 1994 WL 18556, at *2 (collecting cases).  A court has discretion to grant relief from untimely service of responses "'only when (1) the presentation of the merits will be aided and (2) no prejudice to the party obtaining the admission will result.'"  Id. (quoting Donovan v. Carls Drug Co., 703 F.2d 650, 652 (2d Cir. 1983)).

Where a party has responded to an RFA, "[t]he propounding party may move for a judicial determination of the sufficiency of an answer or objection."  Keurig, 2020 WL 6290584, at *4.  If the court finds that the answer does not comply with Rule 36, "the court may order either that the matter is admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a)(6).  A court is "'invested with substantial discretion under Rule 36 . . . to determine the propriety" of RFAs and corresponding answers and objections.  Versatile Housewares, 2010 WL 11601225, at *1 (quoting Dubin v. E.F. Hutton Grp., 125 F.R.D. 372, 373 (S.D.N.Y. 1989)).  If an RFA "seek[s] information as to fundamental disagreement[s] at the heart of the lawsuit, or [is] unduly burdensome, a court may excuse a party from responding to the request[]."  Rep. of Turkey, 326 F.R.D. at 399.

**B. Application**

**1. Timeliness of RFA Responses**

Under the circumstances of this case, the Court declines to strike Economic Alchemy's Responses and deem it to have admitted the RFAs. First, while the Court does not condone the parties' failure to see to it that a protective order was entered in a timely fashion, the Court credits the representation of Economic Alchemy's counsel, as an officer of the Court, that he is speaking truthfully when he states that he was awaiting the entry of the Protective Order before providing the Responses. (ECF No. 103 at 1). The Court takes counsel at his word, and finds that this explanation for the delay is justified. See Fed R. Civ. P. 6(b) (permitting an extension of time for a party's failure to act due to "excusable neglect").

Second, the Court finds that Now-Casting has not shown measurable prejudice from the delay. Now-Casting neither indicates that there were any Responses as to which it has been unable to seek discovery nor describe what discovery it would have sought had it received the Responses earlier. Now-Casting's professed prejudice therefore rings hollow.

Third, the Court finds that excusing the delay will aid in the presentation of the merits in this litigation. In the Responses to the RFAs that have been provided to the Court, Economic Alchemy "admitted" or "denied" without qualification five of the RFAs, and denied another 39, albeit with qualifications. (ECF No. 102-2). To deem all of the RFAs now admitted would lead to contradictions, rather than clarifications as Rule 36 intends. See Beberaggi, 1994 WL 18556, at *3 (noting that "Second Circuit has signaled that the trial court should keep in mind the underlying policy of Rule 36 'to narrow issues and speed the resolution of claims'") (quoting Donovan, 703 F.2d at 652).

Accordingly, the Court finds that it is appropriate to excuse Economic Alchemy's delay in serving its Responses and declines to strike the Responses as untimely.

### 2. Sufficiency of Responses

#### a. Objections based on relevance

Now-Casting complains that many of Economic Alchemy's Responses object on the basis of relevance, some with citation to the Sept. 24, 2019 Opinion. (ECF No. 102 at 2). In its Opposition, Economic Alchemy does not specifically dispute relevance, but argues that the information sought by Now-Casting's First RFPs and First Interrogatories "could be obtained, under oath and far more efficiently, in a deposition." (ECF No. 103 at 3). Similarly, Economic Alchemy contends that Now-Casting's First Interrogatories are improper contention interrogatories that would also be better answered through a deposition. (Id.)

The Court has individually reviewed Now-Casting's First Interrogatories, First RFPs, and RFAs, and orders as follows:

Interrogatory No. 7 asks Economic Alchemy to "[i]dentify all articles, papers, reports, and other writings by Defendant, including by any of its officers, directors, and employees, relating to economic predictions or economic forecasting." (ECF No. 102-2 at 2). Economic Alchemy objects to Interrogatory No. 7 on the grounds that it is "overly broad, unduly burdensome, not relevant . . ., and not proportional to the needs of the case because it seeks information that the Court has already determined is irrelevant to [Now-Casting's] claims." (Id.) The Court finds that Interrogatory No. 7 seeks information that is relevant to this case. A "plaintiff's own generic use" is one of the "[t]ypes of evidence to be considered in determining whether a mark is generic." Pilates, Inc. v. Current Concepts, Inc., 120 F. Supp. 2d 286, 297 (S.D.N.Y. 2000). Judge Ramos's

holding in the Sept. 24, 2018 Opinion that the evidence Now-Casting submitted in support of its motion for judgment on the pleadings, which included Dr. Guzman's use of the Disputed Terms in academic journals, was "not enough to overcome the presumption that Economic Alchemy's trademark is valid" does not preclude discovery relating to those academic journals.  Now-Casting 2019 WL 4640219, at *6.  Accordingly, Economic Alchemy's generic use of the Disputed Terms in its publications is relevant and discoverable, and Economic Alchemy must respond to Interrogatory No. 7.  To the extent that it is overly burdensome for Economic Alchemy to identify every document responsive to Interrogatory No. 7, the parties are directed to meet and confer to narrow the scope of Interrogatory No. 7, such as by focusing on particular time periods or categories of documents most relevant to Economic Alchemy's alleged generic use of the Disputed Terms.

Interrogatory No. 8 asks Economic Alchemy to "[i]dentify all articles, papers, reports, books, periodicals, and other written materials, including electronic publications, in which Defendant and/or Ms. Guzman is quoted or cited."  (ECF No. 102-2 at 2).  Economic Alchemy objects to Interrogatory No. 8 on the same ground as Interrogatory No. 7.  (Id.)  The Court finds that, as drafted, Interrogatory No. 8 is overly broad and unduly burdensome.  While "[e]vidence of the public's understanding of [a generic] term may be obtained from any competent source," including "trade journals, newspapers, and other publications," In re Merrill Lynch, Pierce, Fenner, & Smith, Inc., 828 F.2d 1567, 1570 (Fed. Cir. 1987), Interrogatory No. 8 seeks publicly available information Now-Casting could easily obtain on its own.  In addition, Interrogatory No. 8 does not limit the publications it seeks to those in which Economic Alchemy or Mr. Guzman is quoted or cited concerning the Disputed Terms, and for that reason is also overly broad.

Accordingly, the Court ORDERS Economic Alchemy to respond to Interrogatory No. 8, revised as follows:  "Identify all articles, papers, reports, books, periodicals, and other written materials, including electronic publications <u>of which You are aware</u>, in which Defendant and/or Ms. Guzman is quoted or cited concerning the Disputed Terms, for the time period January 1, 2013 to the present."[2]

    <u>Interrogatories No. 14–18</u> each ask Economic Alchemy to "[d]escribe what is meant by" the use of one of the Disputed Terms in a sentence quoted from a publication written by Ms. Guzman.  (ECF No. 102-2 at 3–6).  Economic Alchemy objects to each of Interrogatories No. 14–18 "on the ground that, based on the Court's prior ruling that the use of this term in academic publications is [of] no relevance, this Interrogatory seeks a response that is not calculated to lead to the discovery of admissible evidence."  (<u>Id.</u>)  Although, for the reasons explained above concerning Interrogatories No. 7 and 8, these Interrogatories seek relevant and discoverable evidence, the Court agrees with Economic Alchemy that these Interrogatories are improper and premature contention interrogatories the answers to which would be more efficiently obtained through a deposition of Ms. Guzman or other Economic Alchemy witnesses.  Accordingly, Economic Alchemy is not required to revise its Responses to Interrogatories No. 14–18.

    <u>Interrogatory No. 19</u> asks Economic Alchemy to "[i]dentify the date [on] which Defendant first became aware of the paper entitled 'Nowcasting:  The Real-Time Informational Content of Macroeconomic Data,' written by D. Giannone, L. Reichlin, and D. Small and dated in 2008, which paper is cited by Ms. Guzman in her aforementioned works."  (ECF No. 102-2 at 6).  Economic

---

[2] Given that Economic Alchemy obtained its trademark registration for the Disputed Terms in May 2013, <u>Now-Casting</u>, 2019 WL 4640291, at *1, the Court has selected a beginning date a few months before the registration was in place.  The parties may, of course, meet and confer to agree on a different date range.

Alchemy objects to Interrogatory No. 19 on the same basis as Interrogatories No. 14–18.  (Id.)  Like Interrogatories No. 14–18, Interrogatory No. 19 also seeks relevant and discoverable information, but unlike those Interrogatories, calls for a simple answer — a date — that is easily provided in an Interrogatory response.  Accordingly, Economic Alchemy is ORDERED to answer Interrogatory No. 19.

RFP No. 5 seeks "[a]ll documents concerning all articles, papers, reports, and other writings by Defendant, including by any of its officers, directors, and employees, relating to economic predictions or forecasting."  (ECF No. 102-2 at 8).  Economic Alchemy objects to RFP No. 5 as "overbroad and unduly burdensome, disproportionate to the needs of the case," and because it "requests production of materials not likely to lead to discovery of admissible evidence in light of the Court's previous determination in this matter that uses of the terms 'nowcast' or 'now-cast' in an academic context are irrelevant."  (Id. at 9).  As explained with respect to Interrogatories No. 7 and 8, Economic Alchemy's own generic use of the Disputed Terms, in an academic setting or otherwise, are relevant, and in the Sept. 24, 2019 Opinion Judge Ramos did not hold to the contrary.  As drafted, however, RFP No. 5 is overly broad and unduly burdensome insofar as "Economic Alchemy is in the business of economic prediction," Now-Casting, 2019 WL 4640219, at *1, such that it conceivably calls for virtually every document in Economic Alchemy's possession.  Accordingly, the Court ORDERS Economic Alchemy to conduct a reasonable search for and produce documents responsive to RFP No. 5, revised as follows:  "all articles, papers, reports, and other publications by Defendant, including by any of its officers, directors, and employees, which contain or describe the Disputed terms that are dated or were created on or after January 1, 2013."

RFAs No. 13–29 and 32–44 ask Economic Alchemy to admit that it was aware of various uses of the Disputed Terms in academic settings and publications before it applied for its federal trademark registration.  (ECF No. 102-2 at 13–23).  Economic Alchemy objects to each of these RFAs on the ground that "the Court has ruled that the use of the terms referenced in academic settings and publications is not relevant to the trademark issue in this case" and denies each Request.  (Id.)  For the reasons explained above concerning Interrogatories No. 7 and 8, the Court finds that these requests seek relevant information, but accepts Economic Alchemy's denial of each of these Requests and declines to require it to revise its Response.

RFA No. 30 asks Economic Alchemy to admit that an image attached to the RFAs "is an accurate screenshot of Defendant's website as it existed on or about January 6, 2013."  (ECF No. 102-3 at 2).  A copy of the image is attached to Now-Casting's Reply, and shows a screenshot with a date of January 6, 2013 at the top for the website, http://economicalchemy.com:80/Economic_Alchemy/Welcome.html.  (ECF No. 104-1 at 2). Economic Alchemy responded to RFA No. 30 stating, "Denied, on the ground that Defendant has no way to authenticate or confirm this information."  (ECF No. 102-3 at 2).  Now-Casting complains that Economic Alchemy's "refusal to admit the authenticity of a screenshot of its own website clearly shows [its] bad faith in this matter," noting that Economic Alchemy's trademark application attaches a virtually identical screenshot.  (ECF Nos. 104 at 2, 104-2 at 9).  In its Opposition, Economic Alchemy clarifies that its Response to RFA No. 30 was, in fact, a denial. (ECF No. 103 at 4).  The Court accepts Economic Alchemy's clarification, deems RFA No. 30 as "denied," and declines to require Economic Alchemy to revise its Response.

RFAs No. 45–54 ask Economic Alchemy to admit that various foreign countries' trademark offices denied its attempts to register the Disputed Marks.  (ECF No. 102-2 at 23–26).  Economic Alchemy responded to each of these RFAs, stating "Because the matter described is not relevant to the facts or legal issues in this matter, being a determination by a foreign agency decided under the laws of another country, Economic Alchemy objects to and denies this Request."  (Id.) Economic Alchemy argues that foreign trademark applications or registrations do not fall within the scope of Rule 26(b)(1), citing In re Bayer Aktiengesellschaft, 488 F.3d 960, 970 (Fed. Cir. 2007) and Deckers Outdoor Corp. v. Australian Leather Pty. Ltd., 340 F. Supp. 3d 706, 715 (N.D. Ill. 2018).  (ECF No. 103 at 4).  Now-Casting responds that neither case stands for the proposition that foreign trademark applications or registrations are irrelevant to the determination whether a mark is generic; rather, in each case the courts found that, "while evidence of foreign use or registrations CAN be relevant, the evidence in those particular cases was not determinative." (ECF No. 104 at 2).  The Court agrees with Now-Casting that the fact that evidence of foreign registrations or use was before the courts in both Bayer and Deckers reinforces that such evidence is relevant and discoverable; whether it is determinative of genericness is a separate question.  In both of those cases, it was not; in this case, its sufficiency is a question for Judge Cronan.  But the Second Circuit has explained that, while a foreign trademark (or lack thereof) is not determinative of a trademark claimant's rights in the United States, "[i]t does not follow, however, that foreign court decisions are never relevant or admissible for any purpose in a U.S. trademark dispute." Otokoyama Co. Ltd. v. Wine of Japan Import, Inc., 175 F.3d 266, 272 (2d Cir. 1999).  Accordingly, Economic Alchemy's relevance objection to RFAs No. 45–54 is misplaced.

Economic Alchemy has, however, denied each of RFAs No. 45–54, and accordingly, the Court deems each of those RFAs <u>denied</u>, such that no further response is required.

### 3.  <u>Responses to Second Requests</u>

Now-Casting served the Second Requests on Economic Alchemy on June 26, 2020, but Economic Alchemy has not responded.  (ECF No. 102 at 4).  Economic Alchemy does not explain its lack of response except to incorporate "[a]ll of the foregoing" objections to the First Interrogatories, First RFPs, and First RFAs, indicate that the Second Interrogatories exceed the limit set by Fed. R. Civ. P. 33(a)(1), and complain that Now-Casting did not respond to Economic Alchemy's discovery requests.  (ECF No. 103 at 5).  Neither party has put the Second Requests before the Court, which is therefore unable to resolve any complaints by Economic Alchemy about their substance.  Now-Casting represents, however, that the First Interrogatories and Second Interrogatories together total 25 (ECF No. 104 at 3), and on that basis, the Court rejects Economic Alchemy's Rule 33(a)(1) objection.  Now-Casting also represents that Economic Alchemy granted it an extension until January 19, 2020 to respond to its requests, which deadline it intended to meet.  (ECF No. 104 at 3).  In any event, the Court will not countenance a juvenile "but he did it too!" argument for failing to respond to written discovery requests.

Accordingly, the Court ORDERS that:

(1) By no later than **<u>February 19, 2021</u>** Economic Alchemy shall respond to Now-Casting's Second Requests, <u>and</u> provide its amended Responses to the First Requests as required by this Order.  In so responding, Economic Alchemy shall heed the Court's guidance in this Order concerning relevance and burden.

(2) By no later than **February 26, 2021**, the parties shall meet and confer to resolve any objections by Economic Alchemy to the Second Requests, and by Now-Casting to any of Economic Alchemy's requests, and agree on a schedule for completion of the parties' respective document productions and depositions.

(3) To the extent the parties are unable to resolve their respective objections and/or agree on a schedule for completion of document production, by **March 5, 2021**, the parties shall file a joint letter of no longer than four (4) pages (a) listing, without argument, the discovery requests that are in dispute and attaching copies of the requests, and (b) setting forth their respective proposals for a schedule for completion of document production and depositions.

(4) On review of the parties' joint letter, the Court will notify the parties whether it will rule on their disputes by written order or schedule a discovery conference.

## IV. CONCLUSION

For the reasons set forth above, Now-Casting's Motion is GRANTED IN PART and DENIED IN PART.  The Clerk of the Court is respectfully directed to close ECF No. 102.

Dated:        New York, New York
              February 8, 2021

SARAH L. CAVE
United States Magistrate Judge