UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                    :
NOW-CASTING ECONOMICS, LTD.,                        :
                                                    :
                          Plaintiff,                :
                                                    :
                                                    :            18 Civ. 2442 (JPC)
             -v-                                    :
                                                    :            OPINION AND ORDER
ECONOMIC ALCHEMY LLC,                               :
                                                    :
                          Defendant.                :
                                                    :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

This case involves a dispute over trademarks.  In 2016, Economic Alchemy LLC ("EA")

sent Now-Casting Economics, Ltd. ("Now-Casting") a cease-and-desist letter accusing Now-

Casting of infringing two of EA's registered trademarks: "NOWCAST", Registration No.

4,341,813 and "NOW-CAST", Registration No. 4,341,813 (the "Disputed Terms").  Now-Casting

then sued EA seeking a declaration that its use of the Disputed Terms does not infringe EA's

trademarks, an order directing the United States Patent and Trademark Office ("USPTO") to

cancel those trademarks, and a permanent injunction restraining EA's interference with Now-

Casting's use of the Disputed Terms.  EA filed counterclaims alleging trademark infringement.

Then, in 2020, the USPTO cancelled EA's trademark registrations on administrative grounds.

That cancellation mooted many of Now-Casting's claims.  But one of its claims remains:

Now-Casting's request for a declaration that its use of the Disputed Terms does not violate EA's

unregistered trademark rights under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Pending before the Court are the parties' cross motions for summary judgment.  Now-Casting

seeks summary judgment on that remaining declaratory judgment claim and on EA's

counterclaims, and EA seeks summary judgment on Now-Casting's claim.  Because no evidence suggests that EA's now unregistered trademarks are protectable, the Court grants Now-Casting's motion for summary judgment and denies EA's motion for summary judgment.

Both parties also seek sanctions.  Now-Casting has moved for sanctions in connection with EA's counterclaims, and EA seeks its fees in responding to that sanctions motion.  EA has not, however, taken an objectively unreasonable position in filing and continuing to pursue its counterclaims, nor has Now-Casting taken such a position in seeking sanctions.  The Court therefore denies Now-Casting's motion for Rule 11 sanctions and EA's request for its fees in opposing that sanctions motion.

## I.  Background

### A.    Facts[1]

This case involves questions about trademark infringement surrounding the Disputed Terms, "nowcast" and "now-cast."  In the economics context, "nowcast" describes a model for

---

[1] These facts are mainly drawn from Now-Casting's statement of material facts under Local Civil Rule 56.1, Dkt. 137 ("Pl. 56.1 Stmt."), EA's statement under Rule 56.1, Dkt. 135-1 ("Deft. 56.1 Stmt."), Now-Casting's counter-statement statement under Rule 56.1, Dkt. 191 ("Pl. Counter 56.1 Stmt."), EA's counter-statement statement under Rule 56.1, Dkt. 194 ("Deft. Counter 56.1 Stmt."), and the exhibits filed by the parties.  Unless otherwise noted, for facts first raised in Now-Casting's statement of material facts, the Court cites only to Now-Casting's Rule 56.1 statement when the parties do not dispute the fact, EA has not offered admissible evidence to refute that fact, or EA simply seeks to add its own "spin" on the fact or otherwise dispute the inferences from the stated fact.  The Court cannot follow its usual practice of citing the counter-Rule 56.1 statement because EA did not comply with Local Civil Rule 56.1—it did not file "a *correspondingly numbered* paragraph responding to each numbered paragraph in the statement of the moving party."  Loc. R. Civ. P. 56.1(b) (emphasis added).  For those paragraphs in Now-Casting's Rule 56.1 statement that EA did not respond to, the Court will deem the facts admitted so long as they are supported by evidence in the record.  *See Marino v. Schult*, 764 F. App'x 73, 74 (2d Cir. 2019) ("If a non-moving party fails to comply with local rules governing summary judgment, a district court may rely on a moving party's statement of undisputed facts as long as those facts are supported by the record." (citation omitted)).

predicting economic conditions, like gross domestic product growth, in the present or near future. Dkt. 142 ("McMahon Declaration") ¶ 8; Pl. Counter 56.1 Stmt. ¶ 6. Since 1996, academic papers and articles have used the Disputed Terms to describe statistical models used to estimate, predict, or analyze macroeconomic information. Dkts. 143-184 ("Grieco Declaration") ¶ 74, Exhs. J1-J80; Pl. 56.1 Stmt. ¶ 91.

### 1.     Now-Casting Background

On December 8, 2010, Domenico Giannone, Jasper McMahon, Lucrezia Reichlin, and Saverio Simonelli founded a United Kingdom corporation called Now-Casting to sell economic forecasts generated by nowcasting models to asset management companies, central banks, and other entities. McMahon Declaration ¶ 5, Exh. B1.1; Pl. 56.1 Stmt. ¶ 12. Almost two months before formerly launching the company, on October 11, 2010, McMahon bought the domain name "now-casting.com" for the company. McMahon Declaration ¶ 6, Exhs. B1, B1.1; Pl. 56.1 Stmt. ¶ 12. Soon after Now-Casting's launch, on December 19, 2010, McMahon created a Wikipedia page about nowcasting in economics. McMahon Declaration ¶ 7, Exh. B2; Pl. 56.1 Stmt. ¶ 13. Around this same time, "in late 2010," Now-Casting began using the name Now-Casting Economics Ltd. in the United Kingdom. McMahon Declaration ¶ 9; Pl. 56.1 Stmt. ¶ 15.

Then by "at least as early as February 22, 2011," Now-Casting began "marketing its nowcasting services to potential customers in the United States." McMahon Declaration ¶ 9, Exh. B3; Pl. 56.1 Stmt. ¶ 15. This included "using the name Now-Casting Economics Ltd. and its

---

As for EA's Rule 56.1 statement, EA once again has not complied with the Local Rule because it cited no admissible evidence. *See* Loc. R. Civ. P. 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").  Thus, unless Now-Casting has admitted the facts in question, the Court will not consider any facts raised only in EA's Rule 56.1 statement.

logo . . . , which incorporates the word Now-Casting, as well as the" Disputed Terms. McMahon Declaration ¶ 9, Exh. B3; Pl. 56.1 Stmt. ¶ 15. These U.S.-based marketing efforts were not a one-off: Now-Casting marketed to at least forty-two U.S. customers in 2011 using its name and logo. McMahon Declaration ¶ 10, Exhs. B3-B81; Pl. 56.1 Stmt. ¶ 16. And at least twice in 2011, Reichlin and McMahon, Now-Casting's CEO, traveled to the United States to advertise to potential clients. McMahon Declaration ¶ 11; Exhs. B3, B76; Pl. 56.1 Stmt. ¶ 11. These efforts paid off. In 2011, three U.S. companies paid to subscribe to Now-Casting's services. McMahon Declaration ¶ 12; Pl. 56.1 Stmt. ¶ 17. Besides the company's marketing efforts, Now-Casting used the Disputed Terms in subscriber emails and on the company website. McMahon Declaration ¶¶ 13-14; Exhs. B26, B32, B33, B39; Pl. 56.1 Stmt. ¶¶ 18-19.

## 2. EA Background

EA is a New York Corporation founded by economist Giselle Guzman. Grieco Declaration, Exh. D ("Guzman Dep. Tr.") at 30:6-11; Pl. 56.1 Stmt. ¶ 22. It offers "services in the nature of economic information, consultancy, and software-as-a-service." Dkt. 193 ("Guzman Declaration") ¶ 2; Pl. 56.1 Stmt. ¶¶ 21. EA's customers mainly consist of financial companies, real estate companies, colleges, and corporations. Grieco Declaration ¶ 13, Exhs. F1-1, F1-2; Pl. 56.1 Stmt. ¶ 28.

On December 16, 2011, EA bought the domain name "nowcast-economics.com." Grieco Declaration ¶ 9, Exh. C1-1; Pl. 56.1 Stmt. ¶ 24. Then on May 28, 2013, EA obtained U.S. trademark registrations for the marks "NOWCAST", Registration No. 4341813, and "NOW-CAST", Registration No. 4341811, *i.e.*, the Disputed Terms, relating to market analysis services. Grieco Declaration ¶ 21, Exhs. W1-W2; Guzman Declaration ¶¶ 3-4; Pl. 56.1 Stmt. ¶ 36. Those registrations both claimed November 27, 2011 as their first use date and January 25, 2012 as their first use in commerce date. Grieco Declaration ¶ 23, Exhs. W1 at 3, W2 at 3; Pl. 56.1 Stmt. ¶ 38.

4

Despite these claimed first use dates in the registrations, it remains unclear when EA began using the Disputed Terms.  At her deposition, Guzman testified that EA began using the Disputed Terms at some point in "late 2011."  Guzman Dep. Tr. at 43:22-44:5; Pl. 56.1 Stmt. ¶ 23.  In Guzman's Declaration, she claims that EA "produced numerous emails" showing that EA contacted "potential customers and investors about EA's services" before August 29, 2012. Guzman Declaration ¶ 30.  Yet EA has not cited, let alone produced, *any* evidence of communications in late 2011.[2]

It was not until 2015 that EA announced the "launch of Now-Cast" in a press release. Grieco Declaration ¶ 12, Exh. G8; Pl. 56.1 Stmt. ¶ 28.  The press release described Now-Cast as "a fully-automated economic prediction platform that analyzes Big Data to monitor real-time events across the world and instantaneously calculate their economic impact on global and local economies on a live minute-by-minute basis."  Grieco Declaration ¶ 12, Exh. G8 at 1; Pl. 56.1 Stmt. ¶ 27.  Then on February 19, 2015, EA applied to register the trademark NOWCAST for other EA services including financial and investment consulting and analysis, and the storage of economic and financial data.  Guzman Declaration. ¶ 6; Grieco Declaration ¶ 21, Exh. W3; Pl. 56.1 Stmt. ¶ 36.

### 3.    Now-Casting and EA Dispute Begins

After Now-Casting asked the Trademark Trial and Appeal Board ("TTAB") on November 29, 2016 for an extension of time to oppose EA's pending application to register NOWCAST, EA sent Now-Casting a cease-and-desist letter.  Grieco Declaration ¶¶ 38-39, Exhs. U1, W3; Pl. 56.1

---

[2] In responding to Now-Casting's request for "[d]ocuments sufficient to identify the date that [EA] first used each of the [disputed] Trademarks," Grieco Declaration, Exh. S1 at 7-8 (Request No. 8), EA produced no evidence responding to this request, despite claiming that it would do so, *id.* ¶ 11, Exh. S3 (EA's production log showing no documents responding to Request No. 8); Pl. 56.1 Stmt. ¶ 26.

Stmt. ¶¶ 54-55.  That letter claimed that Now-Casting was infringing EA's trademark rights in the Disputed Terms by using the terms "now-cast," "now-casts," and "now-casting."   Grieco Declaration ¶ 39, Exh. U1 at 2; Pl. 56.1 Stmt. ¶ 55.  Now-Casting's counsel responded to EA on December 23, 2016.  Grieco Declaration ¶ 40, Exh. U2; Pl. 56.1 Stmt. ¶ 55.  The response maintained that Now-Casting had used the disputed terms before EA was even formed and that the claimed terms were generic.  Grieco Declaration ¶ 40, Exh. U2 at 2; Pl. 56.1 Stmt. ¶ 55.  EA never replied to Now-Casting's letter.  Grieco Declaration ¶ 41; Pl. 56.1 Stmt. ¶ 56.

**B.    Procedural History**

On March 1, 2017, Now-Casting petitioned the TTAB to oppose EA's "application to register its new NOWCAST mark (Opposition No. 91233160)" as well as "to cancel [EA's] NOWCAST mark (Cancellation No. 92065549)."   Guzman Declaration ¶ 7; *see* Grieco Declaration ¶ 42, Exhs. V1-V2; Pl. 56.1 Stmt. ¶ 57.[3]  On October 11, 2017, Now-Casting petitioned to cancel the NOW-CAST mark.  Guzman Declaration ¶ 8; Grieco Declaration, Exh. V5.  On February 22, 2018, the TTAB dismissed Now-Casting's petition for cancellation of EA's Now-Cast mark because Now-Casting did not set forth sufficient facts to plead cancellation based on genericness or descriptiveness.  Guzman Declaration ¶ 13.  In response, on March 13, 2018, Now-Casting filed an amended petition to cancel the NOW-CAST mark.  *Id.* ¶ 17.

Six days later, on March 19, 2018, Now-Casting commenced this action.  Dkt. 1 ("Compl").  In its first cause of action, Now-Casting seeks a declaratory judgment that using the Disputed Terms does not violate EA's rights under 15 U.S.C. §§ 1114 or 1125.  *Id.* ¶¶ 64-66.  In its second and third causes of action, Now-Casting asks the Court to direct the USPTO to cancel

---

[3] The TTAB proceedings have been stayed pending the outcome of this case.  Grieco Declaration ¶ 43, Exhs. V1-V5; Pl. 56.1 Stmt. ¶ 58.

EA's trademark registrations for the Disputed Terms under 15 U.S.C. § 1119. *Id.* ¶¶ 67-76. In its fourth cause of action, Now-Casting requests a permanent injunction restraining EA from interfering with Now-Casting's use of the Disputed Terms and other related terms. *Id.* ¶¶ 77-81.

On June 22, 2018, EA filed its answer and counterclaims against Now-Casting, Dkt. 28, which it amended on August 21, 2018, Dkt. 36 ("Answer"). EA also joined twelve federal reserve banks and the board of governors for the federal reserve as third-party defendants (the "Federal Reserve Banks"). *Id.* at 21-30. EA counterclaimed against Now-Casting for (1) trademark infringement under 15 U.S.C. §§ 1114, 1116, and 1117, *id.* at 18-19 ¶¶ 29-33, (2) common law trademark infringement and unfair competition, *id.* at 19-20 ¶¶ 34-40, (3) false designation of origin under 15 U.S.C. § 1125(a), *id.* at 20 ¶¶ 41-43, and (4) deceptive business practices under New York General Business Law section 349, *id.* at 20-21 ¶¶ 44-47.

On December 21, 2018, Now-Casting moved for judgment on the pleadings, Dkt. 64, and the Federal Reserve Banks moved to dismiss, Dkt. 66. The Honorable Edgardo Ramos, to whom this case was formerly assigned, denied Now-Casting's motion and granted the Federal Reserve Banks' motion. *See Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 18 Civ. 2442 (ER), 2019 WL 4640219 (S.D.N.Y. Sept. 24, 2019). With respect to Now-Casting's motion, Judge Ramos determined that Now-Casting had not made a sufficient showing that "drawing all reasonable inferences in favor of [EA], it is apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to relief." *Id.* at *3 (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)). In particular, the court determined that Now-Casting's reference to numerous "books, articles, courses, conferences, job listings, [and] resumes" in its pleadings in support of an argument that the Disputed Terms were not distinctive enough to merit trademark protection were insufficient to overcome the presumption that EA's then-registered trademarks in the Disputed

Terms were valid and distinctive.  *Id.* at *5-6.  Further, Judge Ramos held that factual disputes between EA's and Now-Casting's pleadings prevented the court from determining at that stage whether the Disputed Terms were generic or whether they had acquired secondary meaning.  *Id.* at *4, 6.

A little over a year later, on January 3, 2020, the USPTO cancelled EA's registrations for the NOWCAST and NOW-CAST marks because EA failed to file the required Declaration of Use. Grieco Declaration ¶ 24, Exhs. W1 at 1, W2 at 1; Pl. 56.1 Stmt. ¶ 39.  This means that EA has no valid U.S. trademark registration for either of the Disputed Terms.  Grieco Declaration ¶ 24; Pl. 56.1 Stmt. ¶ 39.

On October 5, 2020, this case was reassigned to the undersigned.  On November 12, 2021, Now-Casting and EA each moved for summary judgment.  Dkt. 134; Dkt. 136.  EA moves for summary judgment with respect to Now-Casting's declaratory judgment claim, Dkt. 135 ("EA SJ Motion") at 1, while Now-Casting moves for summary judgment with respect to its declaratory judgment claim and each of EA's counterclaims, Dkt. 138 ("Now-Casting SJ Motion") at 1.  As both parties agree that the invalidation of EA's trademark registrations moots Now-Casting's second and third causes of actions to cancel the trademark registrations for the Disputed Terms and Now-Casting has agreed "to withdraw its cause of action for a permanent injunction without prejudice," EA SJ Motion at 1; Dkt. 188 ("Now-Casting SJ Opp.") at 1 n.1, only Now-Casting's declaratory judgment claim remains.  Similarly, EA's first counterclaim for trademark infringement pursuant to 15 U.S.C. § 1114 is no longer at issue given that "[i]t is undisputed that Defendant no longer holds registrations" for the Disputed Terms.  EA SJ Motion at 4.[4]  Therefore,

---

[4] Accordingly, the Court dismisses Now-Casting's second, third, and fourth causes of action and EA's first counterclaim without prejudice.

EA's remaining counterclaims are for common law trademark infringement and unfair competition, false designation of origin under 15 U.S.C. § 1125(a), and deceptive business practices under New York General Business Law section 349.

On January 7, 2022, Now-Casting moved under Federal Rule of Civil Procedure 11 for sanctions against EA and its counsel, Dkt. 203, accusing them of "asserting . . . patently frivolous Counterclaims," Dkt. 204 ("Rule 11 Motion") at 3.  In its opposition, EA asks the Court to order recovery of its fees for responding to Now-Casting's sanctions motion.  Dkt. 210 ("Rule 11 Opp.") at 16.

## II.  Legal Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  While courts "are required to resolve all ambiguities and draw all permissible factual inferences in favor of [the non-moving party], conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment."  *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (alteration in original) (citations and internal quotation marks omitted).  "Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016) (citations and internal quotation marks omitted).

## III.  Discussion

**A.     Threshold Questions**

**1.      Subject Matter Jurisdiction**

EA argues that the Court lacks subject matter jurisdiction over Now-Casting's only remaining claim for a declaratory judgment.  *See* EA SJ Motion at 5-7; Dkt. 192 ("EA SJ Opp.")

at 6-7. "The objection that a federal court lacks subject matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 506 (2006). Rule 12(h)(3) instructs: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "The standard governing a Rule 12(h)(3) motion is the same as that governing a motion under Rule 12(b)(1)." *Bell v. Ramirez*, No. 13 Civ. 7916 (PKC), 2014 WL 7178344, at *2 (S.D.N.Y. Dec. 9, 2014) (first citing *Greystone Bank v. Tavarez*, No. 09 Civ. 5192 (SLT), 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010), then citing *Peterson v. Cont'l Airlines, Inc.,* 970 F. Supp. 246, 248-49 (S.D.N.Y. 1997)); *see also Gallagher v. Sullivan*, No. 15 Civ. 1327 (TJM/TWD), 2018 WL 4610677, at *1 n.2 (N.D.N.Y. Apr. 23, 2018).

On a Rule 12(b)(1) motion, a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005) (citation omitted); *see also Liranzo v. United States*, 690 F.3d 78, 83-84 (2d Cir. 2012) (applying this rule where a party moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) five days before trial). Courts take the uncontroverted facts of the complaint as true, but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration in original) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

The Declaratory Judgment Act permits a district court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). An action seeking declaratory relief satisfies the case-or-controversy requirement, and thus triggers federal jurisdiction, if the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests," and is "real and substantial," such that it "admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (citation, brackets in original, and internal quotation marks omitted). So "when determining declaratory judgment jurisdiction," federal courts "often look to the character of the threatened action." *Medtronic Inc. v. Mirowski Fam. Ventures, LLC,* 571 U.S. 191, 197 (2014) (citation and internal quotation marks omitted). Or said differently, courts look to whether "a coercive action brought by the declaratory judgment defendant . . . would necessarily present a federal question." *Id.* (citation and internal quotation marks omitted).

EA argues first that this Court lacks subject matter jurisdiction over Now-Casting's declaratory judgment claim by citing *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265 (2d Cir. 1974), a case which involved a trademark dispute between two perfume manufacturers.[5] There, the plaintiff requested declaratory relief, damages, permission to

---

[5] EA also argues that it has "located no declaratory judgment decision in this Circuit where subject matter jurisdiction was predicated solely on a common law or [section] 43(a) claim." EA SJ Motion at 6. Besides the fact that EA points to no reason why a section 43(a) claim would differ from any other claim under federal law, Now-Casting points the Court to a decision in this

import its products, and cancellation of the defendant's registered trademark. *Id.* at 1269. The registration for the disputed trademark expired by the trial, which mooted the plaintiff's claims involving the registered trademarks. *Id.* at 1270. On appeal, the plaintiff reformulated its claim as a request for a declaratory judgment that the defendant had no rights to the trademark. *Id.* The Second Circuit noted that the claim for declaratory relief "does not arise under the Lanham Act if [the] only remaining trademark claim stems from common law rights." *Id.* And in a footnote, the court explained that it "has long held that the Lanham Act does not provide jurisdiction or a substantive remedy for general common law unfair competition claims." *Id.* at 1270 n.5 (collecting cases).

But *La Societe* was decided fourteen years before Congress explicitly created a right of action for unregistered trademarks under section 1125(a). *See* Trademark Law Revision Act of 1988, Pub. L. No. 100–667, § 132, 102 Stat. 3935, 3946 (codified at 15 U.S.C. § 1125(a)); *see also Matal v. Tam*, 137 S. Ct. 1744, 1752 (2017) ("[E]ven if a trademark is not federally registered, it may still be enforceable under § 43(a) of the Lanham Act, which creates a federal cause of action for trademark infringement." (citation omitted)). Now, an unregistered trademark claim explicitly can be brought under section 1125(a). Because jurisdiction would exist in an unregistered trademark infringement claim under section 1125(a), it also can exist in a declaratory judgment claim for noninfringement under that section since "a coercive action brought by the declaratory

---

District in which subject matter jurisdiction was based solely on a declaratory judgment claim for noninfringement. *See* Now-Casting SJ Opp. at 11 (citing *Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 437-38 (S.D.N.Y. 2016)).

judgment defendant" for infringement under section 1125(a) "would necessarily present a federal question."[6] *Medtronic*, 571 U.S. at 197 (citations and internal quotation marks omitted).

The question therefore becomes whether Now-Casting has presented a valid declaratory judgment claim relying on section 1125(a).  Federal courts may generally hear cases asking for declarations of trademark noninfringement.  In doing so, a court must ask "whether the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant." *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354 (2d Cir. 2020) (citation and internal quotation marks omitted).  That means that the plaintiff must "adequately allege that he or she has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product."  *Id.* (citation and internal quotation marks omitted).  Allegations that a potential infringer "is prepared to sell products bearing the . . . mark in the United States" suffice. *Id.* at 355.

Now-Casting has alleged facts and provided additional evidence properly before the Court that sufficiently establish by a preponderance of the evidence this Court's subject matter jurisdiction.[7]  Now-Casting alleges that it "began using the Now-Casting Economics Ltd. name in the United States since at least as early as May 2011."  Compl. ¶ 9.  It marketed to at least forty-

---

[6] EA appears to argue as well that Now-Casting's declaratory judgment claim is ambiguous as to whether it derives from state or federal trademark law.  EA SJ Motion at 6 (citing *TV Vues Advert. Agency, Inc. v. Boro Park View*, LLC, No. 19 Civ. 5583 (RRM) (RLM), 2019 WL 7580096, at *4 (E.D.N.Y. Dec. 20, 2019), *report and recommendation adopted by* 2020 WL 207785 (E.D.N.Y. Jan. 14, 2020) ("Because the face of plaintiff's Complaint is ambiguous as to whether plaintiff is asserting a claim under federal or state law, and as plaintiff promptly made clear its intent to limit its claims to those available under state law, this Court concludes that plaintiff's Complaint does not raise a federal question, and therefore, does not support removal.") (footnote omitted)).  If EA is making such an argument, it is rejected.  Now-Casting's Complaint is clear that its claim is based in federal law.  *See, e.g.*, Compl. at 43.

[7] EA has not contested any of the facts relevant to the Court's subject matter jurisdiction analysis.

two United States customers in 2011.  McMahon Declaration ¶ 10, Exhs. B3-B81; Pl. 56.1 Stmt.

¶ 16.  It actually conducted business via its subscription service with three of those customers.

McMahon Declaration ¶ 12; Pl. 56.1 Stmt. ¶ 17.  These actions indicated that, at least in 2011,

Now-Casting was prepared to sell products bearing the marks in the United States.

     While the record is less fulsome as to Now-Casting's current and likely future conduct in

the United States, EA's own actions prior to the commencement of this action—by sending Now-

Casting a cease-and-desist letter—demonstrate that Now-Casting engaged in a course of conduct

that brought it into adversarial conflict with EA.  Courts in this District have held that a cease-and-

desist letter threatening litigation over a trademark may create a controversy addressable through

a declaratory judgment.  *See Sasson v. Hachette Filipacchi Presse*, No. 15 Civ. 194 (VM) (SN),

2016 WL 1599492, at *3-4 (S.D.N.Y. Apr. 20, 2016); *Classic Liquor Imps., Ltd.*, 151 F. Supp. 3d

451, 457 (S.D.N.Y. 2015); *Gelmart Indus., Inc. v. Eveready Battery Co.*, 120 F. Supp. 3d 327,

331-32 (S.D.N.Y. 2014).  EA's December 12, 2016 cease-and-desist letter made such a threat:  If

Now-Casting "fail[ed] to cooperate" with EA's demands, including that Now-Casting cease using

the Disputed Terms and transfer the domain name "www.now-casting.com" to EA, EA would "be

prepared to pursue [its] claims against [Now-Casting] in a court of law."  Grieco Declaration ¶ 39,

Exh. U-1.[8]

     Nor have the actions of the parties resolved this controversy.  EA has not, for instance,

filed a covenant saying that it will never enforce its unregistered trademark claims against Now-

Casting.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 88 (2013) (holding that "a covenant not to

---

[8] To the extent EA's jurisdictional arguments state that there is no controversy in this case
sufficient to grant the Court jurisdiction, EA "cannot pretend now that [its] notices to [Now-
Casting] were 'just kidding'" in an attempt to dismiss the case.  *Lee v. Makhnevich*, No. 11 Civ.
8665 (PAC), 2013 WL 1234829, at *4 (S.D.N.Y. Mar. 27, 2013).

enforce a trademark against a competitor's existing products and any future colorable imitations moots the competitor's action to have the trademark declared invalid" (internal quotation marks omitted)).  Indeed, EA continues to press its counterclaims, though it acknowledges that those counterclaims would be dismissed if this Court were to conclude it lacks jurisdiction over Now-Casting's claim.  EA SJ Motion at 7.

For the above reasons, EA's arguments challenging the Court's subject matter jurisdiction over Now-Casting's remaining declaratory judgment claim fail.

### 2.    Contradictory Theories of Recovery

EA also argues that Now-Casting is improperly seeking summary judgment on inconsistent grounds, *i.e.*, that the Disputed Terms are generic but, if the Court were to find them non-generic, then Now-Casting used them first.  *See* EA SJ Motion at 7.  According to EA, Now-Casting has "waived any claim to senior trademark rights in the subject marks because it has consistently argued that the marks are generic and not amenable to protection as trademarks."  EA SJ Opp. at 8.  This argument fails to appreciate the parties' respective burdens at trial.

As Now-Casting argues, EA ultimately bears the burden of proving that Now-Casting infringed EA's unregistered trademarks as the declaratory judgment defendant.  Now-Casting SJ Motion at 11 n.2, 12-13, 22-23; Now-Casting SJ Opp. at 20-22; *see Noval Williams Films LLC v. Branca*, No. 14 Civ. 4711 (PAC), 2018 WL 389092, at *3 (S.D.N.Y. Jan. 11, 2018) ("[T]he declaratory judgement defendant has to establish infringement as a matter of law.  Since an element of a copyright infringement claim is copyright ownership, the declaratory judgment defendant must establish the copyright ownership *as a matter of law*, if she is to prevail on summary judgment." (citation omitted)); *Classic Liquor Imps., Ltd.*, 201 F. Supp. 3d at 440 (explaining that "declaratory judgment plaintiffs do not have the burden of proving non-infringement" (citing *Medtronic*, 571 U.S. at 198-99)); *see also Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 291 (2d

Cir. 1999) (discussing the district court's realignment of the declaratory judgment action plaintiff and defendant since the burden of proof was only on the defendant).  Now-Casting's assertions about the genericness of the Disputed Terms and its claim to be the prior trademark user are thus better thought of as attacks on EA's infringement claim rather than, as EA characterizes them, "theories of recovery."  EA SJ Motion at 7.  As detailed below, for EA to prevail on its section 1125(a) counterclaim and to defeat Now-Casting's declaratory judgment claim, it must show that the Disputed Terms are "protectable, and that [it] has engaged in 'prior use and ownership.'"  *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, 440 F. Supp. 2d 249, 269 (S.D.N.Y. 2006) (quoting *Virgin Enters., Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)).  Ultimately it is EA that must establish that it was the prior user of a valid mark in order to prevail in opposing Now-Casting's declaratory judgment claim, regardless of Now-Casting's arguments.

**B.    Section 1125(a) and Common Law Claims**

The Court now turns to whether Now-Casting infringed EA's trademark rights through its use of the Disputed Terms.  Section 1125(a) "protects unregistered trademarks from infringement." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000) (citation omitted).  It does so by prohibiting "any person from using in commerce, in connection with any goods, 'any word, term, name, symbol, or device, or any combination thereof which is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of his or her goods by another person.'" *Id.* (quoting 15 U.S.C. § 1125(a)(1)) (alterations omitted).  In determining whether "an unregistered mark is entitled to protection under" section 1125(a), "the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (citation omitted).  The main difference is that the owner of the unregistered mark does not benefit

from the presumption of validity created by federally registering the mark.  *See Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 166 (2d Cir. 2016) ("[W]here 'the mark is not registered,' the burden is on the proponent to 'prove that its mark is a valid trademark.'" (quoting *Reese Publ'g Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980))).

Under these general principles, a party "will prevail on the merits of its unregistered trademark infringement claim if it can show that it has a valid trademark entitled to protection and that the defendant's use of it is likely to cause confusion."  *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997) (cleaned up); *accord 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005).  "Preliminary to making this showing, however, a plaintiff must demonstrate its own right to use the mark . . . in question."  *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007) (citations omitted).  A party owns the mark in question if it "made the first use of the mark to identify his goods or service and continues to use the mark commercially."  *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013) (citing *ITC Ltd.*, 482 F.3d at 147) (additional citation omitted).

Once the party asserting trademark protection meets its burden to show that it owns the mark in question, that party must then meet its burden to show that the mark is protectable. *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 308 (S.D.N.Y. 2012).  For an unregistered mark to be protectable under section 1125(a), the "mark must be sufficiently distinctive to distinguish the registrant's goods from those of others."  *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006) (citation and internal quotation marks omitted).  "The degree to which a mark is entitled to protection under the Act depends on whether the mark is classified as (a) generic, (b) descriptive, (c) suggestive, or (d) fanciful or arbitrary."  *Estee Lauder v. Gap, Inc.,* 108 F.3d 1503, 1508 (2d Cir. 1997) (citation

17

omitted).  Generic marks are unprotectable, and descriptive marks are protectable only when they acquire a "secondary meaning." *Playtex Prods., Inc. v. Ga.–Pac. Corp.,* 390 F.3d 158, 163 (2d Cir. 2004).  As to EA's common law counterclaims, the "legal standards are 'virtually identical' to the standards for trademark infringement and unfair competition under the Lanham Act, except that New York common law claims 'require an additional showing of bad faith.'"  *Lopez v. BigCommerce, Inc.*, No. 16 Civ. 8970 (JPO), 2017 WL 3278932, at *4 (S.D.N.Y. Aug. 1, 2017) (quoting *TechnoMarine SA v. Jacob Time, Inc.*, No. 12 Civ. 790 (KBF), 2012 WL 2497276, at *5 (S.D.N.Y. June 22, 2012)).  A party that fails to prevail on its Lanham Act claims thus cannot prevail on New York common law claims for infringement and unfair competition.  *Id.*

Again, the burden here rests with EA to prove that its trademarks are protectable because "declaratory judgment plaintiffs do not have the burden of proving non-infringement."  *Classic Liquor Imps., Ltd.*, 201 F. Supp. 3d at 440 (citing *Medtronic,* 571 U.S. at 198-99).  EA has presented no evidence that the Disputed Terms are sufficiently distinctive to merit protection as unregistered trademarks.[9]  Instead, EA's briefing focuses on arguing that Now-Casting has not demonstrated that the Disputed Terms are generic or merely descriptive.  EA SJ Motion at 10-12; EA SJ Opp. at 9-14.  Again, EA has the argument backwards.  At summary judgment for a declaratory judgment claim for non-infringement where there is no genuine issue of material fact,

---

[9] The closest EA comes to presenting such evidence is in the "Reply Declaration of Giselle Guzman," which states that EA has produced "scores of documents" from dictionaries which do not list the Disputed Terms or which list them related only to weather forecasting and citing some of those dictionary entries.  Dkt. 201 at ¶ 23.  Setting aside the question of whether this statement establishes a genuine issue of material fact as to the protectability of the Disputed Terms, the Court will not consider evidence or arguments available at the time of the parties' original submissions but not submitted until a reply.  *See Tolliver v. McCants*, No. 05 Civ. 10840 (JFK), 2009 WL 1473445, at *3 (S.D.N.Y. May 26, 2009) (citing *Playboy Enters., Inc., v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997)); *Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993).

it is the defendant who must show that its mark is protectable, not the plaintiff who must show that it is not.  *See Noval Williams Films,* 2018 WL 389092, at *3 ("[T]he declaratory judgement defendant has to establish infringement as a matter of law.  Since an element of a copyright infringement claim is copyright ownership, the declaratory judgment defendant must establish the copyright ownership *as a matter of law*, if she is to prevail on summary judgment.").  EA's argument that distinctiveness is an issue for the trier of fact similarly ignores its failure to present any evidence on this issue.  *See* EA SJ Motion at 12.

EA further argues that its trademarks are protectable because of the presumption of validity and distinctiveness afforded to registered trademarks.  EA SJ Motion at 10-12.  This presumption, however, no longer applies following the cancellation of EA's registered trademarks.  *See Advance Mag. Publishers, Inc. v. Norris*, 627 F. Supp. 2d 103, 114 n.2 (S.D.N.Y. 2008) (explaining that the presumption of inherent distinctiveness no longer applies following cancellation); *W.R. Grace & Co. v. Union Carbide Corp.*, 581 F. Supp. 148, 152 n.7 (S.D.N.Y. 1983) ("Cancellation of plaintiff's mark thus shifts the burden in the infringement action from defendant to plaintiff . . . .").[10]

EA also incorrectly argues that, given Judge Ramos's decision on Now-Casting's motion for judgment on the pleadings, the law of the case doctrine requires that the marks continue to be presumed valid following their cancellation.  EA SJ Motion at 10-11; EA SJ Opp. at 9.  That

---

[10] The cases that EA cite are not to the contrary.  *See* EA SJ Motion at 12.  For instance, in *Rodgers v. Wright*, 544 F. Supp. 302 (S.D.N.Y. 2008), the trademark at issue had been re-registered following its expiration.  *Id.* at 306.  Nor does *Fusco Group, Inc v. Loss Consultants International, Inc.*, 462 F. Supp. 2d 321 (N.D.N.Y. 2006), stand for a wide-reaching proposition that a trademark cancellation "is of no consequence."  EA SJ Opp. at 15 (quoting *Fusco Grp.*, 462 F. Supp. 2d at 328-29).  In *Fusco*, the trademark was re-registered prior to the litigation and, more to the point, the court determined that the cancellation was "of no consequence" specifically with respect to whether the trademark holder could establish prior use when it had also maintained use of the trademark throughout the period of cancellation.  *Fusco Grp.*, 462 F. Supp. 2d at 328-29.

doctrine demands that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citation omitted).  The issues presented in the motion for judgment on the pleadings and the current motion are not the same, however.  In resolving Now-Casting's motion for judgment on the pleadings, Judge Ramos determined that Now-Casting had not made a sufficient showing in the pleadings to overcome the presumption that EA's *registered* trademarks were valid.  *See Now-Casting Econ.*, 2019 WL 4640219, at *3-6.  The issue now before the Court is whether EA, no longer entitled to any presumption of validity or distinctiveness, has presented any evidence of the distinctiveness of its marks.  It has not.[11]

EA's contention that "the Court may find that [EA] could not have maintained an action for infringement against [Now-Casting]" since the Lanham Act does not apply extraterritorially to a foreign party's foreign activities, EA SJ Motion at 6-7, does not help its case.[12]   The

---

[11]  Similarly, it is of no consequence that much of Now-Casting's evidence as to distinctiveness resembles what it presented previously for judicial notice in its motion for judgment on the pleadings.  *See Now-Casting Econ.*, 2019 WL 4640219, at *5-6.  At that stage of the case, the burden was on Now-Casting to prove the absence of any set of facts, accepting the pleadings as true, that would prove the validity of EA's trademarks in the Disputed Terms, which at the time were registered.  Now-Casting's inability to make that showing hardly means that EA has now made the opposite showing of validity at the summary judgment stage, particularly with respect to trademarks that are now not registered.

[12] It is not clear if EA is making a jurisdictional or merits argument here.  As stated below, the question of the extraterritorial application of the Lanham Act is generally not a jurisdictional issue.  In any event, any subject matter jurisdiction challenge on extraterritorial grounds is rejected largely for reasons already discussed.  While purely extraterritorial conduct may give rise to such a remote possibility of liability that a declaratory judgment claim could not be brought because the conduct presents no actual case or controversy justiciable under Article III, *see Saleh*, 957 F.3d at 355-57, Now-Casting's conduct is not purely extraterritorial.  As discussed above, *see supra* III.A.1, Now-Casting has used the Disputed Marks to market its services in the United States— including by having employees travel to the United States to talk with U.S. customers—and it has made sales to three U.S. companies using the Disputed Terms.  McMahon Declaration ¶¶ 9-12, Exhs. B3-B81; Dkt. 141 ¶¶ 24-26; Pl. 56.1 Statement ¶¶ 16-17; *see Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000) ("Trademark infringement occurs where the

extraterritorial application of the Lanham Act is generally a merits question that must be proven in establishing infringement.  *See Hetronic Int'l, Inc. v. Hetronic Ger. GmbH*, 10 F.4th 1016, 1040 (10th Cir. 2021) (explaining that the question of the extraterritorial reach of the Lanham Act goes to the merits, not subject matter jurisdiction); *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 963 (9th Cir. 2016) ("[W]e hold that the extraterritorial reach of the Lanham Act raises a question relating to the merits of a trademark claim, not to federal courts' subject-matter jurisdiction."); *Int'l Diamond Imps., Inc. v. Med Art, Inc.*, No. 15 Civ. 4045 (KMW), 2016 WL 1717217, at *1 (S.D.N.Y. Apr. 27, 2016) ("[T]he issue of extraterritorial limitations [is] an element of the [Lanham Act] claim, not a predicate for subject matter jurisdiction." (citation omitted)); *see also Morrison*, 561 U.S. at 254 (explaining that whether a statute reaches foreign conduct is a merits question, not a jurisdictional question); *United States v. Miranda*, 780 F.3d 1185, 1191 (D.C. Cir. 2015) ("The extraterritorial reach of a statute ordinarily presents a merits question, not a jurisdictional question.").  Since EA has come forward with no evidence demonstrating the protectability of the Disputed Terms anywhere, EA has come forward with no evidence in support of infringement either in the United States or abroad.

In the absence of any evidence presented by EA as to the distinctiveness and protectability of its mark, there is no genuine issue of material fact as to the issue of distinctiveness or protectability in any market.  Therefore, Now-Casting's motion for summary judgment on its Declaratory Judgment Act claim and EA's federal and common law trademark counterclaims is granted, and EA's motion is denied.

---

attempted passing off of an infringing mark occurs." (citations omitted)).  Nor, as discussed, are Now-Casting's actions the only conduct taken into account in assessing whether a case or controversy exists in this action.

**C.    New York General Business Law Section 349 Counterclaim**

Next, the Court turns to Now-Casting's motion for summary judgment on EA's counterclaim under New York General Business Law section 349.  EA has offered no arguments opposing Now-Casting's motion as to this claim.  *See generally* EA SJ Opp.

As an initial matter, because EA does not appear to oppose summary judgment as to its section 349 claim, that claim is deemed abandoned.  *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) ("[W]hen a counseled party moves for summary judgment, 'a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.'" (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014))); *Hardy v. City of New York*, 732 F. Supp. 2d 112, 125 (E.D.N.Y. 2010) ("Federal courts have the discretion to deem a claim abandoned 'when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.'" (citation omitted)); *Dineen ex rel. Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002) (noting that the plaintiff's failure to address the defendant's claims in opposition to summary judgment "enabl[es] the Court to conclude that [the plaintiff] has abandoned them" (citation omitted)).  In any event, the Court will explain why, on the merits, summary judgment in favor of Now-Casting on this claim is warranted.

"Section 349 of the [NY]GBL provides a cause of action for any person injured by '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or [sic] any service.'"  *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting N.Y. Gen. Bus. Law § 349 (McKinney 2022)).  "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at

consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Id.* (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)).  "The prevailing view in the Second Circuit is that trademark infringement claims are not cognizable under § 349 unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 263 (E.D.N.Y. 2021) (cleaned up) (quoting *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012)).  "[T]he elements for alleging false advertising and infringement under the General Business Law are otherwise similar to Lanham Act claims." *Chanel, Inc., v. RealReal, Inc.*, 449 F. Supp. 3d 422, 446 (S.D.N.Y. 2020) (quoting *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 381 (S.D.N.Y. 2019)).

As previously discussed, EA has failed to establish the elements of trademark infringement under the Lanham Act.  Nor does the record reflect any deceptive or misleading acts for which Now-Casting may be liable.  Furthermore, as noted, injuries against private parties alone are not actionable under section 349.  "Corporate competitors may bring claims under § 349(a) only if 'some harm to the public at large is at issue.'" *LVL XIII Brands, Inc., v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 678 (S.D.N.Y. 2016) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)); *see also Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) ("Commercial claimants under § 349 must allege conduct that has 'significant ramifications for the public at large' in order to properly state a claim." (quoting *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 228 F. Supp. 2d 455, 465 (S.D.N.Y. 2002))).  Here, no evidence has been presented to suggest that Now-Casting's purportedly prohibited conduct has caused an actionable "public harm." *LVL XIII Brands,* 209 F. Supp. 3d at 679 (internal quotation marks omitted).

23

Therefore, Now-Casting is entitled to summary judgment with respect to EA's counterclaim under New York General Business Law section 349.

### D.      Rule 11 Sanctions

Having granted Now-Casting's motion for summary judgment and denied EA's motion for summary judgment, the Court turns to the parties' requests for sanctions under Federal Rule of Civil Procedure 11.  Now-Casting claims that EA violated Rule 11 by asserting counterclaims in its Answer without properly investigating whether EA had used the Disputed Terms before Now-Casting.  Rule 11 Motion at 1.  It also claims that EA violated Rule 11 because, after discovering Now-Casting's prior use, EA did not withdraw its counterclaims despite not "identif[ying] even one document or any other evidence demonstrating senior use of the Disputed Terms" and "bearing the burden" to show first use.  *Id.* at 2.  EA opposes the Rule 11 Motion and asks for its fees under Federal Rule of Civil Procedure 11(c)(2) in connection with opposing the motion.  Rule 11 Opp. at 17.

#### 1.      Legal Standard

Rule 11 requires an attorney to certify that (1) a pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b).  Under Rule 11, a party must make a motion for sanctions separately from any other motion.  *Id.* 11(c)(2).  It must then serve the motion on the opposing party, after which it must give the opposing party twenty-one days to "withdraw[] or appropriately correct[]" "the challenged paper, claim, defense, contention, or denial."  *Id.*  The requirement that

24

the adverse party be afforded twenty-one days to remediate or withdraw the allegedly sanctionable

filing is commonly known as Rule 11's safe harbor provision and is a "strict procedural

requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682

F.3d 170, 175 (2d Cir. 2012) (citation omitted).

When a party has complied with the safe harbor requirements, sanctions are appropriate

against the adverse party only after "a showing of objective unreasonableness on the part of the

attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143,

150 (2d Cir. 2009) (citation and internal quotation marks omitted). "The appropriateness of

sanctions is distinct from the underlying merits of a claim." *Int'l Techs. Mktg., Inc. v. Verint Sys.,*

*Ltd.*, No. 15 Civ. 2457 (GHW), 2019 WL 1244493, at \*7 (S.D.N.Y. Mar. 18, 2019) (citation

omitted), *vacated in part*, 991 F.3d 361 (2d Cir. 2021), *and aff'd in part*, 850 F. App'x 38 (2d Cir.

2021). A pleading "violates Rule 11 if it is frivolous, legally unreasonable, or factually without

foundation, even though not signed in subjective bad faith." *Manhattan Enter. Grp., LLC v.*

*Higgins*, No. 18 Civ. 6396 (VSB), 2019 WL 4601524, at \*2 (S.D.N.Y. Sept. 22, 2019) (citation

and internal quotation marks omitted), *aff'd*, 816 F. App'x 512 (2d Cir. 2020). "[T]o constitute a

frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents

that there is no chance of success and no reasonable argument to extend, modify or reverse the law

as it stands." *Simon DeBartolo Grp. L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d

Cir. 1999) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990)).

The 1993 Advisory Committee Note to Rule 11 lays out several possible considerations

for deciding whether to impose sanctions: (1) "[w]hether the improper conduct was willful, or

negligent;" (2) "whether it was part of a pattern or activity, or an isolated event;" (3) "whether it

infected the entire pleading, or only one particular count or defense;" (4) "whether the person has

engaged in similar conduct in other litigation;" (5) "whether it was intended to injure;" (6) "what effect it had on the litigation process in time or expense;" (7) "whether the responsible person is trained in the law;" (7) "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case;" and (8) "what amount is needed to deter similar activity by other litigants." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see VeroBlue Farms USA Inc. v. Canaccord Genuity LLC*, No. 20 Civ. 4394 (JPC), 2021 WL 3913555, at *15 (S.D.N.Y. Sept. 1, 2021), *aff'd*, No. 21-2465-cv, 2022 WL 2133780 (2d Cir. June 14, 2022).

Given "concern for encouraging zealous advocacy," "[c]ourts maintain a high bar for establishing a Rule 11 violation." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008). Sanctions are appropriate under Rule 11 only "where it is patently clear that a claim has absolutely no chance of success." *Weinraub v. Glen Rauch Sec. Inc.*, 399 F. Supp. 2d 454, 460 (S.D.N.Y. 2005) (quoting *Caisse Nationale de Credit Agricole–CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994)). And even if the Court finds that a party has met this high bar, "the decision whether or not to impose sanctions is a matter for the court's discretion." *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).

### 2. Rule 11's Safe Harbor Provision

To begin, the Court finds that Now-Casting satisfied Rule 11's safe harbor provision. Now-Casting served EA with its Rule 11 notice on November 17, 2021. *See* Dkt. 197 at 3. And in response, EA did not withdraw or otherwise amend the allegedly offending papers within the subsequent twenty-one days.

As for EA's request for legal fees to defend the Rule 11 Motion, Now-Casting claims that the request is improper because the request did not comply with Rule 11's safe harbor requirement. Dkt. 211 at 9. That argument misunderstands the law for this posture. "Although [EA] has not

filed a separate cross-motion for sanctions and has not afforded [Now-Casting] 21 days after service of such a motion to withdraw its submissions, '[a] party defending a Rule 11 motion need not comply with the separate document and safe harbor provision when counter-requesting sanctions.'" *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) (final alteration in original) (quoting *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001)); *see also* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("[S]ervice of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion— reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion."). The Court will therefore consider the merits of both Now-Casting's Rule 11 Motion and EA's request for its legal fees for opposing that motion.

### 3.    Merits

Now-Casting argues that, with respect to the factual issue of prior use, EA failed to "conduct a reasonable inquiry into the validity of a pleading before it is signed." Rule 11 Motion at 7 (citing *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)). Now-Casting additionally contends that it was "objectively unreasonable for EA and its counsel to continue to persist in their pursuit of these Counterclaims after discovery, in complete disregard of evidence Plaintiff produced showing that Now-Casting has senior use of the Disputed Terms." *Id.* at 10.

EA's counterclaims and subsequent litigation positions did not violate Rule 11(b) and the Court finds, as a matter of discretion, that sanctions are unwarranted even if they did. Resolving all doubts in favor of EA, EA's filing of its counterclaims and continued pursuit of those claims do not present an "extreme case[]," *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), or "extraordinary circumstance[]," *E. Gluck Corp.*, 252 F.R.D. at 178, so as to warrant sanctions. Now-Casting asserts that its activities do not infringe EA's rights under applicable

trademark law because Now-Casting is a prior user; EA asserts the opposite.  Despite Now-Casting's uncontested evidence of its use of the Disputed Terms in the United States in 2011, not all use of a potential trademark constitutes the type of use that makes one a prior user.  *See Windows User, Inc. v. Reed Bus. Publ'g Ltd.*, 795 F. Supp. 103, 108 (S.D.N.Y. 1992) ("The talismanic test is whether or not the mark was used in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." (citations and internal quotation marks omitted)).  It is therefore not "patently clear" that EA's counterclaims would have failed.  *Weinraub*, 399 F. Supp. 2d at 460 (citation and internal quotation marks omitted).  Sanctions against EA under such circumstances would unduly "chill vigorous advocacy."  *Id.* (citation and internal quotation marks omitted); *see Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005) (explaining that district courts must be "careful not to rein in zealous advocacy").

Additionally, the Court denies Now-Casting's request for sanctions because the fees and costs that Now-Casting incurred in defending against EA's counterclaims were neither duplicative nor wasteful.  Now-Casting's claims and EA's counterclaims largely deal with identical issues: (1) whether EA owns valid trademark rights to the Disputed Terms and (2) whether Now-Casting's use of the Disputed Terms infringed EA's rights.  Now-Casting's briefing in support of its motion for summary judgment naturally and substantially overlaps with its briefing in opposition to EA's cross-motion.  Thus, there is no practicable way for the Court to calculate Now-Casting's "reasonable attorneys' fees and costs" incurred from defending against EA's counterclaims, as distinct from those incurred from prosecuting its own claims.  *Cf. Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 230 (E.D.N.Y. 2002) ("Although attorneys' fees to the movant are authorized, here the purposes of Rule 11 would not be well-served by such an award

28

because of the complications of determining the incremental expense caused to defendant by the particular conduct found sanctionable.").

Further, an important purpose of Rule 11 is to "speed[] up and reduc[e] the costs of the litigation process." *Paganucci v. City of New York*, 993 F.2d 310, 312 (2d Cir. 1993) (citation and internal quotation marks omitted).  Indeed, as noted above, the 1993 Advisory Committee Note to Rule 11 identifies as a possible consideration for deciding whether to impose sanctions "what effect [the improper conduct] had on the litigation process in time or expense."  Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.  Here, EA's counterclaims have had minimal effects on the litigation process and parties' litigation costs.  As noted, they largely concern the same issues implicated by the claims brought by Now-Casting to commence this litigation.  The Court herein has found that Now-Casting prevails on summary judgment, and there is no reason to further and unnecessarily prolong this litigation.  For all these reasons, Now-Casting's Rule 11 motion is denied.

Similarly, the Court finds that, in its discretion, EA is not entitled to recover its fees in opposing Now-Casting's Rule 11 Motion.  The Court disagrees with EA's characterization of Now-Casting's motion as an effort merely to "recapitulate its summary judgment motion."  Rule 11 Opp. at 16.  Rather, Now-Casting's references to its previous arguments merely serve to support its contention that EA's counterclaims were substantively meritless, as it must in a motion seeking sanctions.  And while the Court denies Now-Casting's Rule 11 Motion, it does not find that motion to be frivolous or wholly without merit.  As EA does not present any other argument as to why

Now-Casting's motion is deserving of sanctions, EA's request for fees under Rule 11(c) is also denied.

### IV.  Conclusion

For the foregoing reasons, the Court grants Now-Casting's motion for summary judgment as to its own remaining claim and EA's remaining counterclaims, and denies EA's motion for summary judgment as to Now-Casting's remaining claim.  Now-Casting's and EA's requests for sanctions are both denied.

The Clerk of the Court is respectfully directed to close the motions pending at Docket Numbers 134, 136, and 203, to close this case, and to enter judgment.

SO ORDERED.

Dated: September 15, 2022
     New York, New York

                                          JOHN P. CRONAN
                                  United States District Judge