UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NOW-CASTING ECONOMICS, LTD.,

                             *Plaintiff*,

-*v.*-

ECONOMIC ALCHEMY LLC,

                             *Defendant*.

No. 18-cv-02442 (ER)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT / COUNTERCLAIM PLAINTIFF'S MOTION FOR REARGUMENT OR RECONSIDERATION

Ronald D. Coleman
DHILLON LAW GROUP, INC.
50 Park Place, Suite 1105
Newark, NJ 07102
973-298-1723
rcoleman@dhillonlaw.com
*Attorneys for Defendant / Counterclaim Plaintiff
Economic Alchemy LLC*

**CONTENTS**

**I.     LEGAL STANDARDS.** ............................................................................................... 1

**II.    DEFENDANT'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS CITED THE COMPLAINT, WHICH IS ADMISSIBLE EVIDENCE THAT THE COURT SHOULD NOT HAVE DISREGARDED.** ................................................................................... 1

**III.   THE COURT OVERLOOKED MATERIAL EVIDENCE OF DISPUTED FACTS IN THE SUMMARY JUDGMENT RECORD IN MAKING ITS FINIDINGS OF FACT.** .......... 3

**IV.    ECONOMIC ALCHEMY MET ITS BURDEN ON SUMMARY JUDGMENT TO SHOW THE EXISTENCE OF A SERIOUS FACT QUESTION AS TO THE DISTINCTIVENESS OF THE MARK.** ...................................................................................... 5

**CONCLUSION** ....................................................................................................................... 8

## LEGAL ARGUMENT

I. **LEGAL STANDARDS.**

In the Second Circuit, a court may grant a motion for reconsideration where "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995). The Southern District of New York's Local Rules require that such a motion include "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked" Local Civil Rule 6.3. The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court...." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (cleaned up).

II. **DEFENDANT'S RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS CITED THE COMPLAINT, WHICH IS ADMISSIBLE EVIDENCE THAT THE COURT SHOULD NOT HAVE DISREGARDED.**

The Court appears to have misconstrued defendant's citations to the Complaint in EA's Rule 56.1 Statement. In its Opinion and Order, the Court states as follows:

> As for EA's Rule 56.1 statement, EA once again has not complied with the Local Rule because it cited no admissible evidence. See Loc. R. Civ. P. 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). Thus, unless Now-Casting has admitted the facts in question, the Court will not consider any facts raised only in EA's Rule 56.1 statement.

*Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 18 CIV. 2442 (JPC), 2022 WL 4280403, at *1 (S.D.N.Y. Sept. 15, 2022). But each statement in EA's Rule 56.1 submission cites to the Complaint (and not, obviously, to EA's own pleadings). And as the Second Circuit has recognized, "pleadings constitute the admissions of a party-opponent and are admissible in the

case in which they were originally filed as well as in any subsequent litigation involving that party." *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) (citations omitted). As another court in this Circuit has written:

> As a general rule, of course, a party's pleadings are admissible as admissions, either judicial or evidentiary, as to the facts alleged in that pleading. See *E. Natural Gas Corp. v. Aluminum Co. of Am.*, 126 F.3d 996, 1002 (7th Cir.1997) ("[P]rior pleadings ... are admissible in a civil action as evidentiary admissions."); *cf. U.S. v. McKeon*, 738 F.2d 26, 31 (2d Cir.1984) ("A party [ ] cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories.")

*Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 285, 287 (D. Conn. 2004).

In overlooking this fundamental rule, the Court, as it acknowledged, disregarded each and every statement in EA's initial Rule 56.1 statement. Yet the purpose of these citations was to demonstrate how the Complaint and its exhibits – all 2,265 pages –contain multiple ambiguous, varied, and often contradictory uses of the disputed term. These inconsistent uses contradict plaintiff's assertions regarding the purported meaning of the term, and should not have been overlooked by the Court. Yet by declining to consider these party admissions by plaintiff, the Court erroneously characterized as a "fact" the purported meaning of the term, on page 2 of its Opinion and Order, where it states: "In the economics context, "nowcast" describes a model for predicting economic conditions, like gross domestic product growth, in the present or near future."  The Court can only have come to this conclusion by overlooking plaintiff's own complaint and exhibits, which contradict its assertions about the purported meaning of the disputed term, and which were referred to in defendant's Rule 56.1 Statement.

III. **THE COURT OVERLOOKED MATERIAL EVIDENCE OF DISPUTED FACTS IN THE SUMMARY JUDGMENT RECORD IN MAKING ITS FINIDINGS OF FACT.**

"[S]ummary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial. There must either be a lack of evidence in support of the plaintiff's position, or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer v. Norden Sys. Inc*., 151 F.3d 50, 54 (2d Cir.1998) (citations omitted). The Court erred by overlooking a number of significant, legally material facts in the record that negate a number of key factual findings underpinning the Court's grant of a declaratory judgment to plaintiff.

The Court clearly attached importance to evidence of prior use, discussing it for several pages in the Opinion and Order, which states, "A party owns the mark in question if it 'made the first use of the mark to identify his goods or service and continues to use the mark commercially.'" *Now-Casting*, 2022 WL 4280403, at *9. On this point, however, the Court also says:

> Despite these claimed first use dates in the registrations, it remains unclear when EA began using the Disputed Terms. At her deposition, Guzman testified that EA began using the Disputed Terms at some point in "late 2011." In Guzman's Declaration, she claims that EA "produced numerous emails" showing that EA contacted "potential customers and investors about EA's services" before August 29, 2012. Guzman Declaration ¶ 30. Yet EA has not cited, let alone produced, any evidence of communications in late 2011.

Now-Casting, *id*. at *3. This is not, however, a discovery motion, and the Court should not have chosen to believe plaintiff's counsel's characterization of what EA produced – especially because  Exhibit A to plaintiff's own sealing application includes a document produced by defendant with a Bates number of EA_330691, which is an email sent in 2011 from defendant – utilizing the EconomicAlchemy.com domain, which itself is a trademark use – to a potential

3

investor and customer discussing the NOWCAST-branded product sold by defendant. This 2011 email, and the declaration signed under penalty of perjury by Ms. Guzman regarding the emails produced in this litigation, corroborate her deposition testimony, all of which constitute evidence of 2011 use of the disputed term sufficient to withstand summary judgment; see, *Crawley v. City of Syracuse*, 496 F. Supp. 3d 718 (N.D.N.Y. 2020) (on motion for summary judgment, best evidence considerations are not appropriate grounds for rejecting sworn testimony that writings exist).

Moreover, to the extent that the Court chose to believe plaintiff's counsel but not to believe Ms. Guzman, this was improper as well, for "in reviewing the evidence and considering what inferences may reasonably be drawn, the Court "may not make credibility determinations or weigh the evidence. ... 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' " Reeves, 530 U.S. at 150, 120 S.Ct. 2097 (quoting Liberty Lobby, 477 U.S. at 255, 106 S.Ct. 2505)." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021). If, as seems to be the case, the Court placed importance on what was or was not produced in this case, Ms. Guzman's testimony alone was sufficient to address that point as well as to forestall a finding on the issue of prior use "a conclusory statement . . . from a party having personal knowledge, may be sufficient to forestall summary judgment." *Id*. at 878. The Court overlooked the email showing defendant's use of the disputed term in 2011 that was contained in the summary judgment record, and this constitutes an oversight meriting reconsideration.

So too is the fact that the Court failed to notice that the domain name registration receipt submitted by plaintiff in its sur-reply was actually purchased by Farbrook Farm LTD, an

4

unrelated entity not a party to this litigation. Any reliance by the Court on this document, therefore, was a factual error.

Similarly, the Court failed to take notice of the multiple entries in EA's production log, which was filed as part of its summary judgment papers, identifying responsive documents showing secondary meaning of the mark, i.e., documents responsive to Request No. 8, which were attached to the Grieco Declaration as Exh. S3. The Court, in Footnote 2 of its Opinion, erroneously stated:

> In responding to Now-Casting's request for "[d]ocuments sufficient to identify the date that [EA] first used each of the [disputed] Trademarks," Grieco Declaration, Exh. S1 at 7-8 (Request No. 8), EA produced no evidence responding to this request, despite claiming that it would do so, id. ¶ 11, Exh. S3 **(EA's production log showing no documents responding to Request No. 8**); Pl. 56.1 Stmt. ¶ 26 [emphasis added].

This is demonstrably incorrect. Exh. S3 clearly shows multiple entries marked as being responsive to Request No. 8. Specifically, page 40 of Exh. S3 shows that EA produced at least six documents identified as being responsive to Request No. 8: EA_034039-EA_034039.pdf; EA_034040-EA_034041.pdf; EA_034042-EA_034046.pdf; EA_034047-EA_034047.pdf; EA_034048-EA_034048.pdf; and EA_034049-EA_034049.pdf. This was another oversight by the Court that clearly affected its conclusions and which justify reconsideration.

## IV. ECONOMIC ALCHEMY MET ITS BURDEN ON SUMMARY JUDGMENT TO SHOW THE EXISTENCE OF A SERIOUS FACT QUESTION AS TO THE DISTINCTIVENESS OF THE MARK.

Citing *Advance Mag. Publishers, Inc. v. Norris*, 627 F. Supp. 2d 103, 114 n.2 (S.D.N.Y. 2008) and *W.R. Grace & Co. v. Union Carbide Corp.*, 581 F. Supp. 148, 152 n.7 (S.D.N.Y. 1983), the Court found that the presumption of validity "no longer applies following the cancellation of EA's registered trademarks." *Now-Casting*, 2022 WL 4280403,

at *10. In *Advance Mag. Publishers*, this Court noted in a footnote, without discussion or citation to authority, that "Defendants are not entitled to a presumption of inherent distinctiveness" because of the inadvertent administrative cancellation of their mark. 627 F. Supp. 2d at 114. In contrast, in *W.R. Grace*, the Court observed that the cancellation decision by the USPTO was supported by a "a forty-four page decision [that] held that the term 'barrier bag' was commonly descriptive (generic) and unanimously granted Carbide's Petition to cancel Grace's Federal Registration No. 939,345 for the said term." 581 F. Supp. 148, 151 (S.D.N.Y. 1983). Here, in contrast, it is undisputed that the inadvertent administrative cancellation of defendant's mark was not based on the merits, or any substantive grounds at all.

In response to EA's citation of *Fusco Grp., Inc. v. Loss Consultants Int'l, Inc.*, 462 F. Supp. 2d 321, 328–29 (N.D.N.Y. 2006) to the effect that "[t]he fact that Defendant's mark was cancelled in 2002 and registered in 2003 is of no consequence . . .," the Court wrote, "In *Fusco*, the trademark was re-registered prior to the litigation and, more to the point, the court determined that the cancellation was 'of no consequence' specifically with respect to whether the trademark holder could establish prior use when it had also maintained use of the trademark throughout the period of cancellation." *Now-Casting*, 2022 WL 4280403 at *10.

The Court appears to have overlooked, however, that here too defendant's registration was in place "prior to the litigation" and, at least as significantly, **during the period of infringement** that was the basis for defendants' demand letters – on which the Court relies to establish declaratory judgment jurisdiction. Similarly, the court in *Waples-Platter Companies v. Gen. Foods Corp.*, 439 F. Supp. 551, 578 (N.D. Tex. 1977), also cited by defendant, held that by issuing a registration, the USPTO recognizes that a trademark had achieved secondary meaning

and was entitled to a presumption of such for the time the registration was effective, even if subsequently cancelled.

Indeed, contrary to the Court's suggestion, defendant never mooted "a wide-reaching proposition that a trademark cancellation 'is of no consequence.'" *Id*. What defendant argued based on *Fusco* was simply that "plaintiff has failed to establish that defendant – who held registrations for the marks in question less than a year ago, and when this lawsuit was filed – cannot possibly prove facts at trial establishing the existence of secondary meaning." Neither of the cases cited in the Court's opinion address the only relevant question: whether the lack of a **presumption** of validity is equivalent to a lack of proof of validity **sufficient to raise a material fact** on a summary judgment motion in an action for a declaration of non-infringement.

This argument was developed at considerable length in defendant's moving brief, and was premised on the substantive legal principle that the presumption of validity of a registered trademark is not retroactively nullified merely because that registration administratively lapsed, absent evidence of a change in circumstances (i.e., concerning secondary meaning) after the issuance of the registration, citing *Rodgers v. Wright*, 544 F. Supp. 2d 302 (S.D.N.Y. 2008). The Court, in its Opinion and Order, distinguishes *Rodgers* on the basis that "the trademark at issue had been re-registered following its expiration," but fails to explain why this is significant here – and if so, why EA's pending application to re-register its mark is not also significant for purposes of the summary judgment standard.

Moreover, as defendant observed in its brief, what *Rodgers* stands for is not a broad general rule that "cancellation never matters," but rather, as this Court observed in that case, that it was "beyond dispute that plaintiff's mark is protectable. The Chic mark was twice-

7

registered with the USPTO **without reference to a secondary meaning**, and defendants have put forward no argument or evidence to rebut the presumption that the mark is therefore not merely descriptive." *Id*. at 310 (emphasis added). See also, *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc*., 887 F. Supp. 2d 519, 530 (S.D.N.Y. 2012) (although former owner no longer actually owned a registered mark, it could use prior registration as prima facie evidence of entitlement to the mark).

Because EA had earlier registered the mark, and the inadvertent administrative cancellation of its trademark was not based on an adjudication of the merits, the prior registration was in and of itself sufficient to deny summary judgment to the plaintiff here.

## CONCLUSION

For the foregoing reasons, defendant / counterclaim plaintiff Economic Alchemy, LLC requests that the Court reconsider its grant of summary judgment granting a declaratory judgment of non-infringement to plaintiff and, consistent with the foregoing, vacate the same and deny the motion because of the existence of material disputed facts.

DHILLON LAW GROUP, INC.

By: /s/ Ronald D. Coleman
Ronald D. Coleman

50 Park Place, Suite 1105
Newark, NJ 07102
973-298-1723
rcoleman@dhillonlaw.com
*Attorneys for Defendant / Counterclaim Plaintiff Economic Alchemy LLC*

Dated: October 6, 2022